1997-NMCA-088

946 P.2d 227

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David SALAZAR, Defendant–Appellant.**

**No. 17675.**

Court of Appeals of New Mexico.

July 8, 1997.

Certiorari Denied Sept. 17, 1997.

Tom Udall, Attorney General, Arthur W. Pepin, Asst. Attorney General, Santa Fe, for Appellee.

Steven G. Farber, Santa Fe, for Appellant.

## OPINION

APODACA, Judge.

1. Defendant appeals the trial court's order denying his motion to dismiss the indictment against him on double jeopardy grounds. He argues that the trial court abused its discretion in declaring a mistrial due to a manifest necessity because of juror disability. The mistrial was declared after the jury had already been sworn and seated for Defendant's trial. We are unpersuaded that the trial court abused its discretion and therefore affirm.

## I. BACKGROUND

2. Defendant was indicted on multiple drug charges. A jury was selected and sworn on the day set for trial. No alternate juror or jurors were selected. The next day, one of the jurors, Ms. Ortiz (the juror) asked to be excused. The trial court conducted a lengthy meeting in chambers during which the juror was questioned by the trial court, the prosecutor, and defense counsel. Defendant was present during that meeting. At the conclusion of the meeting, the trial court determined that the juror was disabled and, because Defendant could not be tried with less than twelve jurors, there was manifest necessity to declare a mistrial. The trial court held that the State was authorized to retry Defendant.

3. Defendant later moved to dismiss the indictment, arguing that jeopardy had attached, that the court had abused its discretion in ordering a mistrial because there was no manifest necessity, and that, as a result, because of the federal and state constitutional prohibitions against double jeopardy, Defendant could not be tried again. The trial court denied Defendant's motion to dismiss on double jeopardy grounds and this appeal followed. Additional facts will be developed in our discussion of the issues.

## II. DISCUSSION

### A. Standard Of Review

4. "A motion for a mistrial is addressed to the sound discretion of the trial court and is only reviewable for an abuse of discretion." *State v. Saavedra*, 103 N.M. 282, 284, 705 P.2d 1133, 1135 (1985). "An abuse of discretion is defined as a decision that is 'clearly against the logic and effect of the facts and circumstances before the [trial] court.'" *State v. Chandler*, 119 N.M. 727, 733, 895 P.2d 249, 255 (Ct.App.), *cert. denied*, 119 N.M. 617, 894 P.2d 394 (1995) (quoting *State v. Lucero*, 98 N.M. 311, 314, 648 P.2d 350, 353 (Ct.App.1982)). "An appellate court should be wary of substituting its judgment for that of the trial court." *State v. Alberico*, 116 N.M. 156, 170, 861 P.2d 192, 206 (1993).

### B. Jeopardy

5. We agree with Defendant and the State that jeopardy attached when the jury was sworn. Consequently, Defendant's federal and state constitutional protections against being placed in double jeopardy attached at that time. We also agree with Defendant's contention that, unless there was a manifest necessity for a mistrial, Defendant cannot be retried. *See State v. Martinez*, 120 N.M. 677, 679, 905 P.2d 715, 717 (1995).

### C. Mistrial Due To Manifest Necessity

6. To dispose of this appeal, we must focus on one essential question. "Does the record disclose a manifest necessity for declaring a mistrial under the circumstances [in this appeal]?" *State v. Messier*, 101 N.M. 582, 584, 686 P.2d 272, 274 (Ct.App.1984). If manifest necessity existed, then the trial court did not abuse its discretion in declaring a mistrial. *See id.* The illness of a juror may be considered manifest necessity for the declaration of a mistrial. *See id.* at 585, 686 P.2d at 275.

#### 1. Juror Disability

7. As we noted previously, once the juror asked to be excused, the trial court ordered an extensive meeting in chambers attended by all counsel and Defendant. When the trial court asked the juror why she wished to be excused, she responded that she didn't feel right, either emotionally or physically, and that she was not ready to take on that kind of responsibility in a criminal case. When asked why she had not mentioned these facts on voir dire, she responded that she had felt then she would not be biased or unable to make rational decisions but that the headache she felt coming on had gotten worse as the day wore on. After the trial court asked if she could not reconsider and fulfill her responsibilities, the juror replied that she understood what an awesome responsibility she had, that she was not a quitter, that it would be her fault if she took everyone's time, and she would have to shoulder her responsibilities.

8. Defendant characterizes these responses to the trial court's questions as indicating the juror's willingness to meet her responsibilities despite her health concerns. When questioned by defense counsel, however, the juror indicated she got migraine headaches that made her physically ill, she got them once or twice per month, they were brought on by stress, and she could not ignore the pain. The juror also said her medication was not able to eliminate the pain and, although she was normally a good listener, the pain could make her miss evidence. The State, on the other hand, characterizes the juror's responses as indicating the debilitating nature of the juror's headaches and that the headaches might prevent her from thinking clearly. The trial court thus was presented with the seemingly incompatible responses of the juror indicating that she wished to be excused, that she understood and wanted to accept her responsibilities, but that she suffered disabling headaches that could influence her ability to be fair and impartial.

9. The trial court was faced with resolving these contradictory statements by determining whether the juror was in fact able to continue. "The court performs this fact-finding role by reciting events and assessing the credibility of the [responses] offered." *State v. Attaway*, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994). This component of the trial court's inquiry is purely factual, and the trial court is given wide latitude in determining

that a fact has been established. *See id.* Additionally, we note that the issue of whether the juror's illness prevented her from being able to serve and to render a fair and impartial verdict is not unlike the issue of juror bias in *State v. Saavedra*, 108 N.M. 38, 42, 766 P.2d 298, 302 (1988) (*Saavedra II*). In *Saavedra*, a similar case of manifest necessity for a mistrial, our Supreme Court said that, when the underlying issue involves juror bias, the trial court should be "allowed broad discretion whether to declare a mistrial." *Id.* We determine that a like standard should be applied here, especially where the trial court has indicated on the record its "sensitivity to double jeopardy concerns by exercising careful consideration of the issue in a calm, reflective, and thoughtful manner." *State v. Litteral*, 110 N.M. 138, 142, 793 P.2d 268, 272 (1990).

10. The trial court very carefully articulated on the record its rationale for concluding that the juror's disability rendered her unable to continue. The court also expressed its belief that, notwithstanding the juror's willingness to continue, she was physically and emotionally disabled. The trial court based this finding on the juror's demeanor, evidenced by her being visibly upset, her voice trembling and her being near tears. The trial court concluded that the juror appeared to be emotionally distraught and was unable to serve.

11. As we already noted, we give great latitude to the trial court in making the factual determination of the juror's disability. *See Attaway*, 117 N.M. at 144, 870 P.2d at 106; *Saavedra II*, 108 N.M. at 42, 766 P.2d at 302. This is precisely the kind of evidence, visible outward signs of demeanor, observable to the trial court but invisible to the appellate court, that exemplifies the rationale for the discussion in *Attaway* and *Saavedra II*. Additionally, in reviewing the trial court's decision, we view the evidence in the light most favorable to the decision, resolving all conflicts and indulging in all reasonable inferences most favorable to that decision. *See State v. Lankford*, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978).

12. In so viewing the evidence, we determine there was sufficient evidence of the juror's disability and that the trial court did not abuse its discretion in finding the juror was unable to continue.

### 2. Other Factors

■ 13. To declare a mistrial and retry Defendant, the trial court's determination alone that the juror was disabled is not all that is required. *See Messier*, 101 N.M. at 585, 686 P.2d at 275. In *Messier*, we held that the trial court must also examine other factors to insure fairness to the defendant. *See id.*

### a. Alternatives

■ 14. For this Court to approve the declaration of a mistrial, Defendant argues we must find "clear and compelling" evidence of the trial court's consideration and pursuit of reasonable alternatives. As a basis for this argument, Defendant relies on *Saavedra II*, 108 N.M. at 41–42, 766 P.2d at 301–02; *State v. De Baca*, 88 N.M. 454, 458–61, 541 P.2d 634, 638–41 (Ct.App.1975); *State v. Sedillo*, 88 N.M. 240, 539 P.2d 630 (Ct.App.1975); and *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). We have carefully reviewed these cases and cannot find such a standard. To the contrary, *De Baca* specifically acknowledges that the "cases are not clear and to what kind or how much of an inquiry into alternatives is necessary[.]" 88 N.M. at 460, 541 P.2d at 640.

■ 15. Defendant next argues that the trial court did not explore alternatives before declaring a mistrial. We disagree. The trial court articulated several possible alternatives.

16. The first alternative was to continue the trial with the juror in place. Both the State and Defendant indicated reluctance to do that. In an effort to continue with this juror, the trial court had asked her if she could not "dig down deep inside." Then the trial court explained in some detail how much time and effort had gone into preparation for trial, all of which would be lost if the juror was unable to serve. Finally, the trial court asked the juror if she could not reconsider her decision and "fulfill her responsibilities." Defendant's counsel lodged a formal objec-

tion to this line of inquiry, which he characterized as the trial court's "coercive" attempt to get the juror to say she would continue to serve. Considering Defendant's objection to the trial court's attempt to get the juror to continue, it is now difficult to understand Defendant's claim that the trial court did not adequately pursue that alternative.

17. The second alternative was to continue with only eleven jurors. Both counsel and the trial court agreed this alternative was not constitutionally permissible. The third alternative proposed was for Defendant to agree to a mistrial for manifest necessity. Defendant rejected this proposal.

18. Defendant argues the trial court could have considered a continuance or postponement to see if the juror would improve. "[W]e would not require of the trial court a detailed record of each alternative explored and the reasons for rejecting each one[.]" *De Baca*, 88 N.M. at 461, 541 P.2d at 641. On this point, we will assume the trial court determined that postponing the trial would be ineffective because the court found that the juror would be even further impaired in the future because of the process she had undergone that morning.

19. The trial court asked both the State and Defendant to propose other alternatives. Defendant did not propose any additional alternatives. Once the court determined that the juror was disabled, the possible alternatives were limited. We conclude that the trial court not only adequately explored the available alternatives, but requested other alternatives from the parties, which were not offered.

**b. Fairness**

20. The trial court was properly concerned about the equity to both the State and Defendant in attempting to proceed with a disabled juror. The court made a specific effort to insure fairness to Defendant by providing twelve impartial jurors for the entire trial. In protecting Defendant from the risk that the juror's disability would later interrupt the trial, thus cause a second trial, the trial court was insuring that neither side would gain any tactical advantage by learning the other's trial strategy. *See Messier*, 101 N.M. at 584, 686 P.2d at 274. Although the jury had been selected and sworn, the prosecutor had not given an opening statement, much less presented any evidence. Consequently, the only theoretical tactical advantage to the State from a mistrial would be the opportunity to select a "better" jury or have more time to gather evidence and prepare witnesses. But nothing in the record suggests that the mistrial gave the State a "second bite of the apple ... to either strengthen its case or to alter its trial strategy," *De Baca*, 88 N.M. at 459, 541 P.2d at 639 (citations omitted), two important factors relating to Defendant's interest in having his fate determined by the first jury impaneled. *Id.*

**c. Bad Faith**

21. Another factor the trial court must consider is whether there was bad faith on the part of the State. *See Messier*, 101 N.M. at 584, 686 P.2d at 274. The record does not reflect to us any indication of bad faith on the part of the State.

## III. CONCLUSION

22. In considering all of the factors that the trial court should have examined, we conclude that the court properly examined the results of its decision that the juror was disabled and acted within the bounds of sound discretion in finding that the trial could not continue.

23. Based on our standard of review, we conclude that the trial court did not abuse its discretion in declaring a mistrial due to manifest necessity. We therefore affirm.

24. IT IS SO ORDERED.

HARTZ, C.J., and BUSTAMANTE, J., concur.