This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.                **NO. 28,017**

**STEPHANIE PERKINS,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Joe Parker, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Defendant Stephanie Perkins appeals her jury convictions for possession of a controlled substance (methamphetamine) with intent to distribute and for possession of drug paraphernalia. She challenges the convictions on the following four grounds: (1) her convictions are not supported by substantial evidence; (2) the district court erred when it instructed the jury regarding the definition of possession; (3) the district court should have granted a mistrial due to the officers' failure to collect certain evidence related to whether Defendant resided at the home where she was arrested; and (4) ineffective assistance of counsel based on counsel's failure to do certain pretrial discovery relevant to whether Defendant lived at the home and to file suppression motions. We affirm.

**I.    BACKGROUND**

On April 20, 2005, police officers executed a search warrant at a home in Clovis, looking for evidence that drugs were being sold there. While the search was underway, Defendant arrived in a car and got out holding a soda cup and a Marlboro cigarette pack. Officers came out of the home and handcuffed her, in the course of which she put down the cup and the cigarette pack. A later search of the cigarette pack revealed 1.7 grams of methamphetamine. The search of the home turned up numerous items alleged to be drug paraphernalia, some of which contained methamphetamine residue. One witness, Deputy Malin Parker, testified that

Defendant became upset and verbally abusive and repeatedly used language asking what the officers were doing in "her house" and that they should get out of "her house." Deputy Parker also testified that in one bedroom of the residence, he found a New Mexico identification card for Defendant with an address different from the home being searched. He also found pictures and mail, both of which led him to believe that Defendant resided in the home. In addition to Defendant, the officers encountered other persons in the home. These persons were searched and allowed to leave without giving statements. Additional facts will be developed in the context of the issues discussed.

## II. SUBSTANTIAL EVIDENCE

Defendant argues that there was insufficient evidence that she physically possessed methamphetamine and constructively possessed the drug paraphernalia in the home. Defendant does not contest that drugs and drug paraphernalia were found during the search of the residence. Rather, she argues that the State did not adequately connect her to those items. First, Defendant contends that her possession of the 1.7 grams of methamphetamine in the Marlboro pack was not proved beyond a reasonable doubt. Her second issue deals with constructive possession. She claims that because there was insufficient evidence to prove she resided in the home, there was insufficient evidence that the paraphernalia was hers. Along the same lines,

Defendant also takes issue with the evidence regarding the other three persons whom the officers found in the home at the time of the search. Defendant argues that there was an insufficient showing that these three persons did not have access to the rooms where most of the evidence was found. We begin with our standard of review and elements of the convictions. Then we will address Defendant's two arguments.

**A.  Standard of Review**

"Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). The test to determine the sufficiency of evidence in New Mexico is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. *State v. Sutphin*, 107 N.M. 126, 131, 753 P. 2d 1314, 1319 (1988). "This Court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* On appeal, the appellate court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994).

**B.  Elements of the Convictions**

Here Defendant was convicted of two crimes. As to possession of methamphetamine with intent to distribute, the State had to prove that Defendant: (1) had methamphetamine in her possession; (2) knew it was methamphetamine or believed it to be methamphetamine; and (3) intended to transfer it to another. *See* UJI 14-3104 NMRA. Because the amount of methamphetamine seized was only 1.7 grams, the State had to prove the intent element by proving that Defendant possessed the paraphernalia which included items such as scales, baggies with the corner cut out, measuring spoons, and other articles often used for distribution of drugs. To find Defendant guilty of possession of drug paraphernalia, the State was required to prove that Defendant: (1) possessed drug paraphernalia; and (2) intended to use the drug paraphernalia for the purpose of producing, processing, preparing, testing, analyzing, packing, re-packing, storing, containing, concealing, injecting, ingesting, or otherwise introducing into the human body a controlled substance. *See* NMSA 1978, § 30-31-25.1(A) (2001). For both offenses, the State also had to prove that the events happened in New Mexico on or about the 20th day of April, 2005, an issue not in dispute in this case. We begin with the evidence regarding drugs in the cigarette pack.

**C.    Marlboro Pack**

Defendant's position is that there was insufficient evidence linking her to methamphetamine in the cigarette pack. She argues that the evidence concerning

where the cigarette pack was found was conflicting, that there was no continuous observation of the pack, and that there might have been more than one pack.

A review of the evidence presented at trial shows the following. Deputy David Kube testified that Defendant set the cigarette pack on the ground in the course of being handcuffed. Deputy Daniel Freeman similarly testified that Defendant placed the pack on the ground while being handcuffed. He recalled there also being a lighter and that Deputy Parker was the next person to pick up the cigarette pack. Deputy Victor Rodriguez testified that Deputy Parker "retrieved a Marlboro cigarette pack from near a trash can," and that the trash can was "[o]utside the house by the front steps."

On cross-examination, Deputy Rodriguez testified that the cigarette pack was "[k]ind of partially under, I wouldn't say they were under the trash can," and that when Defendant was on the ground, "they were directly in front of her by the trash can." Deputy Rodriguez testified that there was no other trash around. Deputy Parker testified that he saw the cigarette pack "on the ground" and asked Deputies Kube and Freeman where it came from. They said Defendant had been holding it and that she put it on the ground. Deputy Parker also testified—inconsistently with his testimony that he had seen it on the ground—that he got information from other officers that Deputy Freeman had set it on the porch. Deputy Parker opened the pack and found

6

the plastic bag with methamphetamine inside. On cross-examination, Deputy Parker again testified that he found the pack on the porch step, and he did not recall any trash can being there.

While we agree with Defendant that there are differences in the officers' testimony regarding the cigarette pack, it is up to the jury to resolve factual inconsistencies in testimony. *State v. Morales*, 2000-NMCA-046, ¶ 8, 129 N.M. 141, 2 P.3d 878. There was substantial evidence to support a conclusion that Defendant was holding the cigarette pack and put it down as she was being handcuffed. There was no other trash around, and one or more officers were in the vicinity of the pack during the relevant time. There is no suggestion of any means by which the pack in evidence might have been substituted for the one Defendant was holding. There appears to be no question that the substance found in the pack was methamphetamine. Viewing this evidence in the light most favorable to the verdict, we conclude that substantial evidence supported Defendant's conviction for possession of methamphetamine. *Apodaca*, 118 N.M. at 765-66, 887 P.2d at 759-60.

**D. Constructive Possession**

Possession of the drug paraphernalia was necessary to prove the element of intent to distribute the methamphetamine. There appears to be no dispute that the various items introduced into evidence constituted drug paraphernalia or that

possession of such items would establish intent to distribute as opposed to personal use of the methamphetamine. Defendant argues that there was insufficient evidence to prove possession because the State failed to prove (1) that she lived at the house, and (2) that the items were in her possession as opposed to the possession of the other persons present in the residence when the officers arrived.

As to who lived in the house, Deputy Parker testified that when Defendant arrived at the residence, she "wanted to know why we were in her house, what were we doing in her house. She repeated multiple times to get out of her house." This was an admission made by Defendant. Although she argues that the other officers did not testify to hearing the admission and that the admission was not mentioned in any police report, it is up to the jury to evaluate a witness's credibility. *State v. Fuentes*, 2010-NMCA-027, ¶ 17, ___N.M. ___, 228 P.3d 1181.

Additionally, Deputy Parker testified that he found Defendant's New Mexico ID card in the east bedroom of the residence where some of the items of paraphernalia were also found. He acknowledged that the ID card had a different address on it than the residence being searched. On cross-examination, Deputy Parker testified that during earlier surveillance he observed Defendant and other persons going in or out. He acknowledged that, during the search, he saw several pieces of mail with Defendant's and her husband's or boyfriend's name on them, but he did not know

8

what address was on the mail. Deputy Parker also saw pictures of Defendant that led him to believe the residence was hers, but he did not feel it was necessary to collect them. Defendant's admissions and the other testimony provide sufficient evidence to support the jury's conclusion that Defendant resided at the home that was searched.

The evidence also supports the conclusion that Defendant constructively possessed the drug paraphernalia. Deputy Rodriguez searched a dresser in the east bedroom where he found eight cut plastic baggies, also known as corner baggies, which he testified are used for packaging narcotics. Officer Riley Loomis, a probation officer, testified that after entering the home, he went to the east bedroom, which he believed was the master bedroom. In the bathroom that was inside the master bedroom, he saw in plain view a set of Triton T-2 scales with white powdery residue on them that field-tested positive for methamphetamine. In the master bathroom, Officer Loomis also found: a metal spoon that field-tested positive for methamphetamine; a black, zippered bag containing two measuring spoons with white residue and a plastic baggie with white residue; and a tin containing a baggie with marijuana seeds and stems inside and a pair of metal clamps with burned residue consistent with marijuana use.

Three of the State's witnesses testified concerning the other persons present at the beginning of the search. Their testimony was inconsistent as to whether there

were two or three persons present. Deputy Rodriguez testified that upon entry he encountered a male and a female. He secured the male and Deputy Freeman secured the female in the kitchen. Officer Loomis also testified that as he entered the home, he encountered two persons immediately inside. He did not speak to them. Deputy Parker recalled that there was a male and two females present in the kitchen and living area of the home. They were read their *Miranda* rights and consented to be searched. Deputy Parker wrote their names down and released them.

To prove either actual or constructive possession, the State must show that Defendant had both knowledge and control of the drug paraphernalia. *State v. Barber*, 2004-NMSC-019, ¶ 27, 135 N.M. 621, 92 P.3d 633. "Proximity alone does not constitute possession." *State v. Garcia*, 2005-NMSC-017, ¶ 13, 138 N.M. 1, 116 P.3d 72 (citing UJI 14-130 NMRA). "[C]onstructive possession is a legal fiction used to expand possession and include those cases where the inference that there has been possession at one time is exceedingly strong." *Barber*, 2004-NMSC-019, ¶ 22 (internal quotation marks and citation omitted). "Constructive possession exists when the defendant has knowledge of the presence of the drug and control over it." *State v. Brietag*, 108 N.M. 368, 370, 772 P.2d 898, 900 (Ct. App. 1989). "Where a defendant is not in exclusive possession of the premises on which drugs are found, an inference of constructive possession cannot be drawn unless there are incriminating

10

statements or circumstances tending to support the inference." *Id.* "Because bedrooms are usually private areas of a house and dresser drawers are especially private, evidence indicating *sole* occupancy of a bedroom supports a logical inference of control and knowledge of the room's contents by the usual occupier." *Id.* (internal quotation marks and citation omitted).

Although Defendant cites a number of cases to support her argument that the evidence was insufficient to prove possession of the paraphernalia, she primarily relies on *Brietag* and *State v. Maes*, 2007-NMCA-089, 142 N.M. 276, 164 P.3d 975. In *Brietag*, the defendant and other persons were seen coming and going from the defendant's rented house. Seven or eight people, but not the defendant, were present when the search began. A witness testified that the defendant had been renting a room from her elsewhere for about a month before the search. Prior surveillance had established that some of the other persons had stayed all night at the defendant's house on occasion. One person stated that he had been staying there about a month. Various drugs were found in several areas of the home. No evidence, such as personal belongings, definitively linked the defendant to these areas, except that rent receipts and electric bills in the defendant's name and photographs of him with family members were found in a bedroom where drugs were found. Various property belonging to others and papers in other persons' names were also found in the room.

11

The State acknowledged that the defendant did not have exclusive possession of the premises and that the premises were open and used by others. This Court characterized the premises as a "crash pad" with insufficient evidence that the defendant alone used the bedroom. *Id.* at 370, 772 P.2d at 900.

In *Maes*, 2007-NMCA-089, ¶ 6, the defendant was present during a search of a bedroom that revealed two bottlecaps with methamphetamine residue and a corner of a baggie with traces of methamphetamine in it. The defendant denied living in the home. The officers found two pieces of mail addressed to the defendant at a different address, but no other bills or personal papers. They also found women's clothing in the bedroom, but could not say it was the defendant's. Relying on *Brietag*, this Court concluded the evidence was insufficient and reversed the conviction. We pointed out that "[t]he State's theory of constructive possession—that [the d]efendant necessarily controlled every item in the house of which she had knowledge—is not a correct statement of the criminal law of constructive possession." *Maes*, 2007-NMCA-089, ¶ 21.

The question of possession is one of fact. While we agree that there are similarities between the facts in the present case and those in *Brietag* and *Maes,* the differences are material and distinguish this case from *Brietag* and *Maes*. In the case before us, the other persons present were encountered in the living area and kitchen

of the home. Although there was no testimony as to how long Defendant had been absent, nothing indicates that she had been away for weeks as had the defendant in *Brietag*. The fact that she arrived carrying only a soda cup and a pack of cigarettes suggests that her absence was brief. The master bedroom and bathroom where the paraphernalia was found also contained evidence, consisting of Defendant's ID card, mail, and photographs, indicating that the bedroom was hers. No testimony suggested that the officers encountered an intermingled jumble of other persons' personal items as in *Brietag*, nor was there any evidence that the other persons present at the time of the search or anyone else had ready access to the bedroom area. Unlike the defendant in *Maes*, where the drug evidence consisted of tiny, easily overlooked items, Defendant here could not help but be aware of the presence of the paraphernalia, some of which was in plain view.

We conclude that substantial evidence supported a conclusion that Defendant possessed drug paraphernalia, and that the nature of the paraphernalia indicated that Defendant intended to distribute methamphetamine.

**III.    JURY INSTRUCTION ON DEFINITION OF POSSESSION**

Defendant argues that the district court failed to read a portion of the jury instruction defining possession of a controlled substance and that he read a portion of the instruction that is inconsistent with *Maes*. Defendant acknowledges that she did

not object to the instruction at trial. "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citations omitted). "The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *Barber*, 2004-NMSC-019, ¶ 14 (internal quotation marks and citation omitted).

UJI 14-3130 NMRA defines possession of a controlled substance. The first sentence of the instruction sets forth the basic definition of possession. The court must then decide which of three optional sentences following the basic instruction are appropriate. *See* UJI 14-3130, Use note 2. The district court modified the instruction to include the drug paraphernalia in addition to the methamphetamine and included the first two of the three optional sentences:

> A person is in possession of methamphetamine or drug paraphernalia when she knows it is on her person or in her presence, and she exercises control over it.

> Even if the methamphetamine or drug paraphernalia is not in her physical presence, she is in possession if she knows where it is, and she exercises control over it.

14

> Two or more people can have possession of methamphetamine or drug paraphernalia at the same time.

Defendant argues that the district court should have added the third optional sentence, which in unmodified form reads as follows:

> A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.

*Id.* Defendant argues that the evidence at trial raised an issue as to whether constructive possession of the methamphetamine and paraphernalia could be attributed to her, given the presence of the other persons in the residence.

In *Barber*, drugs and paraphernalia were found on top of a toilet in a motel room bathroom. The defendant, who was also found in the bathroom, stated that he was there only to take a shower, that he saw the drugs but did not touch them, and that there were four other admitted users of methamphetamine in the vicinity of the room. At trial, no instruction was given on the definition of possession, even though the committee commentary to UJI 14-3130 states that "[t]his instruction must be given if possession is in issue." Reviewing for fundamental error, the Supreme Court first considered whether a reasonable juror would have been confused or misdirected by the instruction on possession of drugs given without an accompanying instruction defining possession. Recognizing that the potential for confusion existed, the Court concluded that there was no reasonable likelihood that the jury had been confused,

15

given the presence of other evidence from which inferences could be drawn that the drugs and paraphernalia belonged to the defendant. *Barber*, 2004-NMSC-019, ¶¶ 19-28. *Barber* also noted that any potential for confusion likely favored the defendant; without a definition of possession, a jury would more likely reason that a person does not possess something just by being in its vicinity. *See id.* ¶ 26.

We find *Barber* controlling. Defendant contends that the failure to include the third optional sentence confused and misdirected the jury as to the central issue in the case—whether constructive possession of the paraphernalia and methamphetamine could be attributed to her in spite of the existence of at least three individuals who either lived at or enjoyed access to the home. We disagree. As in *Barber*, a number of people including Defendant were in proximity to the drugs. Had this language been included, the jury could have used it to exclude the individuals because mere proximity to the paraphernalia or methamphetamine would have constituted possession. As in *Barber*, any potential for confusion by excluding the language would have likely favored Defendant.

Defendant also argues that the first optional sentence of UJI 14-3130, which was included in the jury instructions in this case, is inconsistent with the following sentence in *Maes*:

> A defendant's knowledge of the location of . . . another person's stash of
> drugs coupled with the physical ability to exercise control over them in

16

the owner's absence does not justify an inference of the defendant's constructive possession of drugs anymore than a defendant's knowledge of the location of a housemate's stash of cash would justify an inference that the defendant constructively possessed the housemate's money in the housemate's absence.

*Maes*, 2007-NMCA-089, ¶ 21. We first point out that the quoted sentence was immediately followed by this sentence:

The [s]tate's theory of constructive possession—that [the d]efendant necessarily controlled every item in the house of which she had knowledge—is not a correct statement of the criminal law of constructive possession, and we expressly disapprove of closing arguments that incorporate this view of the law.

*Id.* Defendant's reliance on the first quoted sentence above fails to distinguish between "the physical ability to exercise control" and an actual exercise of control. In many cases it would be physically possible for one person to go into another person's unlocked bedroom or other private area uninvited, but the bare possibility that the person could access an item in this manner is insufficient to show constructive possession. There must be evidence that the person actually exercised control over the item, not just that he could have.

In Defendant's case, the jury could infer that Defendant exercised control over the drug paraphernalia in her bedroom and bathroom. There was not just the mere possibility that she could go into the bedroom uninvited; there was evidence that the bedroom was hers and that she actually exercised control over it.

17

We conclude that nothing about UJI 14-3130 as modified in this case leaves Defendant's conviction "open to such question that it would shock the conscience to permit the conviction to stand." *Barber*, 2004-NMSC-019, ¶ 14 (internal quotation marks and citation omitted).

**IV.    OFFICERS' FAILURE TO COLLECT CERTAIN EVIDENCE**

Defendant argues that a mistrial should have been granted because the officers executing the search failed to collect or otherwise preserve: (1) photographs, letters, utility bills, or other items indicating that she lived there; (2) statements from the persons who were present when the search began and were allowed to leave; and (3) fingerprints from the cigarette package. "A motion for a mistrial is addressed to the sound discretion of the trial court and is only reviewable for an abuse of discretion." *State v. Salazar*, 1997-NMCA-088, ¶ 4, 124 N.M. 23, 946 P.2d 227 (internal quotation marks and citation omitted). "An abuse of discretion is defined as a decision that is clearly against the logic and effect of the facts and circumstances before the [trial] court." *Id.* (alteration in original) (internal quotation marks and citation omitted).

In *State v. Ware*, 118 N.M. 319, 325-26, 881 P.2d 679, 685-86 (1994), our Supreme Court adopted a two-part test for deciding whether to sanction the State when police fail to gather evidence from a crime scene.

> First, as a threshold matter the evidence that the State failed to gather from the crime scene must be material to the defendant's defense.

18

Sanctions are not appropriate for failure to gather evidence immaterial to the defendant's defense. The determination of evidence materiality is a question of law for the court. Evidence is material only if there is a reasonable probability that, had the evidence been [available] to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

If the evidence is material to the defendant's defense, then the conduct of the investigating officers is considered. If the trial court determines that the failure to collect the evidence was done in bad faith, in an attempt to prejudice the defendant's case, then the trial court may order the evidence suppressed. If it is determined that the officers were grossly negligent in failing to gather the evidence—for example, by acting directly contrary to standard police investigatory procedure—then the trial court may instruct the jury that it can infer that the material evidence not gathered from the crime scene would be unfavorable to the State. When the failure to gather evidence is merely negligent, an oversight, or done in good faith, sanctions are inappropriate, but the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt.

*Id.* (alteration in original) (internal quotation marks and citations omitted).

We conclude that the first two of the three categories of evidence of which Defendant complains were material to her defense as that concept is defined in *Ware*. We conclude that the third item—fingerprints from the cigarette package—were not material because, as discussed above, there was eyewitness testimony that Defendant had it in her hand and an adequate chain of custody to support a finding that the pack introduced at trial was the same one Defendant had in her hand when she got out of the car upon arriving at the residence. There is no reasonable probability that having

19

the fingerprints available to Defendant would have led to a different result. Rather, it is likely that the fingerprint evidence would have been cumulative of the eyewitness testimony.

The other two categories of evidence not gathered—items documenting that Defendant resided at the address in question and statements from the other persons present—were material, given the otherwise circumstantial evidence that Defendant lived there and that the other persons did not have access to the bedroom. The one documentary item in evidence, the New Mexico ID card retrieved from the bedroom, in fact had a different address on it, as was acknowledged at trial. The strength of the probability that having the documentation and statements available would have led to a different result depends, of course, on what they would have shown had they been gathered.

In *Ware*, the missing evidence was a rock allegedly used to strike the victim. The investigators photographed the rock, but did not gather it as evidence. The defendant argued that this prevented him from being able to analyze the rock for blood, hair, and fibers. The trial court suppressed the photographs and testimony concerning the rock. The Supreme Court, using the two-part test set forth above, concluded that the court erred in suppressing evidence of the rock, and that the officers' failure to collect the rock was "a judgment call and certainly not anything

more than mere inadvertence or ordinary negligence on the part of the police." *Id.* at 326, 881 P.2d at 686.

We believe the actions of the officers in the present case were also a judgment call. From Deputy Parker's point of view, before he searched the bedroom he already had evidence that Defendant lived at that address, as she made repeated statements to the effect that the officers should get out of her house. Upon finding the ID card, he also had evidence linking her to the master bedroom. At trial, Deputy Parker testified that he normally would have collected pieces of mail if he had not found an ID card lying there. We view his decision that he had sufficient evidence of residence without taking Defendant's personal mail and photographs to be a judgment call that we will not second-guess. The same concept applies to the officers' failure to obtain statements from the persons who were present in the home. Deputy Parker testified that the persons were secured, given *Miranda* warnings, and interviewed. They consented to be searched, in the course of which no contraband was found. At least one of these persons was named in the police report, but the record does not indicate whether defense counsel attempted to locate and interview this person. The record also does not indicate what Deputy Parker's interviews revealed, but we again decline to second-guess his decision not to obtain formal statements.

We further observe, as the court pointed out in *Ware*, that where the failure to

21

gather evidence is at worst negligent and thus sanctions are inappropriate, "the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt." *Id.* at 325-26, 881 P.2d at 685-86. The trial transcript indicates that defense counsel vigorously cross-examined Deputy Parker in particular, inquiring about several investigatory omissions thus pointing out potential weaknesses that implicated reasonable doubt.

We conclude that the district court did not err in denying Defendant's motion for mistrial.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that she received ineffective assistance of counsel because of trial counsel's deficiencies in two areas: (1) his failure to file suppression motions or conduct discovery that would have supplied grounds for such motions and (2) his failure to introduce certain evidence tending to negate the assertion that Defendant lived at the residence searched. Defendant claims that this evidence would have shown that her son and a third person lived there and that Defendant lived at another address.

Counsel is presumed competent. *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127.

22

> To establish a prima facie case of ineffective assistance of counsel, [the d]efendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that [the d]efendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (quoting *Lytle v. Jordan*, 2001-NMSC-016, ¶¶ 26-27, 130 N.M. 198, 22 P.3d 666). "On appeal, we will not second guess the trial strategy and tactics of the defense counsel." *Lytle*, 2001-NMSC-016, ¶ 43 (internal quotation marks and citation omitted).

Counsel representing Defendant at trial was not her original counsel. At a motions hearing on November 13, 2006, about-three-and-a-half months before trial, Defendant's eventual trial counsel, Albert Granger, appeared telephonically and informed the court that Defendant had a conflict with her original counsel and had asked Granger to represent her. In the course of this hearing, the prosecutor informed the court that Defendant's previous counsel had considered filing a motion to suppress, but after interviewing the confidential informant in the case, former counsel told the prosecutor that he did not believe such a motion would have any merit and that he would not file it. Defendant does not explain why her original counsel's conclusion after interviewing the informant was incorrect, or what she or Granger would have learned from the documents, photographs, or other persons present in the home that would have made a motion to suppress newly appropriate. In essence,

Granger decided not to duplicate parts of the investigation done by original counsel. Regarding the documents and photographs, as discussed above, we conclude that Deputy Parker's failure to gather them as evidence did not require a mistrial. Once the search was done without the documents or photographs having been gathered as evidence, there is nothing defense counsel could have done after the fact to obtain them for trial. None of this strikes us as a performance "[falling] below an objective standard of reasonableness," and we therefore conclude that Defendant's ineffective assistance claim fails the first prong of the test set forth in *Aker* and numerous other cases. *See Aker*, 2005-NMCA-063, ¶ 34.

Defendant also argues that defense counsel failed to introduce evidence that her son lived at the residence, that Defendant lived at another address, and that a third party also lived at the residence. Except for the evidence at trial that Defendant's ID card showed a different address, the record before us contains nothing either supporting or negating these allegations.

> When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.

*State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Having concluded that Defendant has not made a prima facie case of ineffective assistance,

24

we also conclude that her claim that counsel overlooked additional evidence would be better pursued in a habeas corpus petition.

**VI.  CONCLUSION**

For the reasons set forth above, we affirm Defendant's convictions for possession of a controlled substance (methamphetamine) with intent to distribute and possession of drug paraphernalia.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**TIMOTHY L. GARCIA, Judge**

25