This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                                                      **NO. 30,608**

**JESSE HERNANDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Freddie J. Romero, District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

Defendant appeals his conviction for second-degree murder, contending that the conviction was not supported by substantial evidence, the district court erred in denying his motion for a mistrial, and his counsel was ineffective. We address each issue in turn, and for the reasons stated in this Opinion, we affirm on all grounds.

## I.  BACKGROUND

On a Saturday night in June 2009, friends and acquaintances gathered at a home in Roswell, New Mexico to watch pay-per-view fights. After the televised fights, an unanticipatedly large party involving alcohol and drug use ensued at the residence. Defendant and his girlfriend attended the party. Around 3:00 a.m., Defendant and his girlfriend were sitting with other individuals around a picnic table in the backyard. Jose "Mikey" Chavez (Victim) approached Defendant's girlfriend, who appeared to be taking drugs at the picnic table, and admonished her for using drugs. At that point in time, Defendant shot Victim in the torso. Victim died from the gunshot wound. The State subsequently prosecuted and a jury convicted Defendant of the second-degree murder of Victim. Defendant now appeals. We discuss the facts in further detail as necessary throughout this Opinion.

## II.  DISCUSSION

### A.  Defendant's Conviction Was Supported by Substantial Evidence

Defendant contends that "the evidence presented by the State was legally

2

insufficient to sustain a conviction for second-degree murder." As we review the case for sufficient evidence to support the verdict, we analyze

> whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused. When determining the sufficiency of the evidence, the court views the evidence in a light most favorable to the verdict, considering that the State has the burden of proof beyond a reasonable doubt.

*State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72 (citation omitted). We will not reweigh the evidence or substitute our judgment for that of the jury. *State v. Graham*, 2005-NMSC-004, ¶ 7, 137 N.M. 197, 109 P.3d 285. "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (alteration in original) (internal quotation marks and citation omitted).

During the four-day trial, the State presented testimony from thirty-four witnesses. Two eye witnesses, Keisha Timpleton and Camille Coronado, identified Defendant as being at the party and either shooting or pointing a gun at Victim. Their statements were corroborated by the testimony of other party-goers and fingerprint evidence found at the scene of the crime.

Timpleton testified that while at the party, she went outside to smoke a cigarette and stood by the picnic table where she saw Defendant seated. There, she observed a white substance that appeared to be drugs on the picnic table. Timpleton stated that

Victim walked over to and spoke with a girl who was sitting at the same table as Defendant. Timpleton testified that she then saw Defendant stand up and shoot Victim. She stated that Defendant was wearing either a dark green or faded blue shirt. Although defense counsel impeached Timpleton with prior conflicting statements about whether she had actually seen the gun's muzzle flash and whether she had only heard the shooting without seeing it, Timpleton subsequently reasserted that she saw Defendant "stand up, lift his gun out of his shirt and shoot this boy." This statement was consistent with her prior statements to the police about how Defendant had reached for the gun during the incident. Furthermore, she explained any inconsistencies in her statements by stating that she had been scared and still in shock when she initially spoke to the police. Days after the shooting, Timpleton identified Defendant twice in two different photo arrays. Timpleton had never met Defendant prior to the night of the party and was not drinking at all that evening.

Camille Coronado, who knew Defendant from before the shooting, identified Defendant as having been at the party, sitting opposite her at the picnic table. She stated that he was wearing a turquoise shirt, and he was sitting with his girlfriend when the girlfriend "ben[t] over and snort[ed] something" off the table. At that point, Coronado looked away from the table. Shortly thereafter, she heard a shot fired and turned in the direction of the sound, seeing Defendant rise from the table.

Simultaneously, she saw Victim running away from the table. Coronado stated that within moments, Victim fell to the ground. Testimony from Leticia Chacon, Coronado's friend, established that Victim ran into her from behind, knocking her down, after being shot. Coronado testified that Defendant then stood over Victim and Chacon, pointing a gun at them. Coronado stated that Chacon was screaming, "Don't shoot, don't shoot."

Crystal Aguilar, a third eye witness, corroborated Coronado's statement, testifying that she had her back toward the table when she heard shots fired and ran for cover. Aguilar stated that she heard Victim scream that he had been shot. At that point in time, Aguilar turned around and saw a man in a blue shirt or jersey standing over and pointing a gun at Victim and Chacon, who were on the ground.

Aguilar also testified that the man with the gun ran by her to the front door of the house with a girl, and both got into an old, dark colored, two-door car. Through photographs provided by the police, Aguilar later identified the car as the same vehicle registered to Defendant's mother, which Defendant was driving when he was later pulled over by police. Testimony from other witnesses who knew Defendant and his girlfriend also indicated that Defendant had arrived at the party in a car matching Aguilar's description.

During a police interview several days after the shooting, Defendant denied

attending the party where Victim was shot. Defendant denied having known anyone living at the house where the incident occurred and asserted that he had remained home the evening of the party. Nonetheless, Christopher Lujan, a resident of the house where the party took place, testified that he knew Defendant prior to the party and had seen him at the bar where the party-goers gathered before the party started at the house. Additionally, several eye witnesses testified that Defendant had attended the party. And, a fingerprint found on a beer can recovered from the table where the shooting occurred also placed Defendant at the party.

Examining this testimony and physical evidence in the light most favorable to the jury's verdict, we conclude that there was sufficient evidence to support Defendant's second-degree murder conviction. The State presented eye witness testimony placing Defendant at the scene of the crime, describing the series of events that led to the shooting, identifying Defendant as the shooter, and identifying the vehicle Defendant used to flee the scene of the shooting. Based upon this information, a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict Defendant of second-degree murder.

Defendant asserts that because party-goers gave inconsistent statements and the State failed to recover the murder weapon or any other forensic evidence besides the single fingerprint, sufficient evidence was not presented to convict him of any form

of murder. We disagree. The State provided direct evidence in the form of eye witness testimony that Defendant shot and killed Victim. There is no requirement for the State to produce the murder weapon or other specific forensic evidence in proving that Defendant committed the crime. The State need only produce sufficient evidence that would support a conviction beyond a reasonable doubt. *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86. Here, the testimony and fingerprint evidence produced at trial supports Defendant's conviction beyond a reasonable doubt. Moreover, any conflicts in the testimony go to the weight and credibility of the evidence and are for the jury to resolve. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482.

To the extent Defendant contends that the evidence is consistent with two hypotheses and therefore proves neither, we conclude that the State's evidence is wholly inconsistent with a hypothesis of Defendant's innocence. Because Defendant did not introduce any evidence at trial, our conclusion about potential theories of the case is limited to the evidence provided by the State. The State's evidence only supports the conclusion that Defendant shot Victim.

Defendant also argues that insufficiency is evidenced by the fact that Defendant was not charged with and the jury was not instructed on "lesser included offenses, including voluntary manslaughter." Defendant contends that "[t]o say beyond a

reasonable doubt that, based on [the facts of the case], Defendant acted without provocation is not possible." We first note that the fact that Defendant was charged with and the jury was instructed on only one criminal offense does not inform our sufficiency analysis with regard to his one conviction for that charged offense. On appeal, our task is only to determine whether sufficient evidence supports the verdict actually rendered by the jury. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. To the extent that Defendant argues that the facts support a conviction for voluntary manslaughter, we reiterate that our inquiry is whether the trier of fact's "decision is supported by substantial evidence, not whether the [trier of fact] could have reached a different conclusion." *In re Ernesto M., Jr.,* 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. Therefore, simply because Defendant contends that the jury could have reached a different conclusion, we need not address such contentions, as sufficient evidence supports a conviction for the greater offense. In addition, Defendant did not request a voluntary manslaughter instruction, nor was provocation an issue at trial as Defendant's theory of the case was mistaken identity.

Additionally, we understand Defendant's arguments regarding provocation to challenge the sufficiency of the evidence establishing Defendant's intent. "Intent involves a defendant's state of mind and is seldom, if ever, susceptible to direct proof. Therefore, intent may be proved by circumstantial evidence." *State v. Archie*, 1997-

8

NMCA-058, ¶ 10, 123 N.M. 503, 943 P.2d 537 (citation omitted).  The act itself may be sufficient to infer the defendant's mens rea.  *State v. Montoya*, 77 N.M. 129, 131, 419 P.2d 970, 971 (1966).  Here, eye witness testimony established that Defendant reached for the gun on his person, fired it at Victim, fled the scene of the crime, and later denied being at the party.  We conclude that this evidence is sufficient for the jury to infer, as required by the jury instructions, that Defendant acted purposely and not accidentally or otherwise.

Therefore, Defendant's conviction was supported by sufficient evidence establishing that he shot Victim and acted purposefully in doing so.  We affirm Defendant's conviction with regard to sufficiency.

**B.      The District Court Did Not Err in Denying Defendant's Motion for a Mistrial**

Defendant contends that the district court "erred in denying Defendant's motion for a mistrial based on the indirect introduction of extrinsic evidence tending to implicate Defendant as a suspect in another, unrelated and uncharged shooting." "A motion for a mistrial is addressed to the sound discretion of the trial court and is only reviewable for an abuse of discretion." *State v. Salazar*, 1997-NMCA-088 ¶ 4, 124 N.M. 23, 946 P.2d 227 (internal quotation marks and citation omitted).  "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and

circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). "An appellate court should be wary of substituting its judgment for that of the trial court." *State v. Alberico*, 116 N.M. 156, 170, 861 P.2d 192, 206 (1993).

In particular, Defendant argues that he "was directly prejudiced by the State's indirect implication of him in the commission of other, unspecified crimes. Specifically, the State's questioning of [fingerprint expert witness, Bonnie] Knoll was . . . designed to make mention of another investigation involving Defendant's fingerprints: the investigation of the shooting of Manuel Archuleta." At trial, the State questioned Knoll about whether she had received items to be fingerprinted from the Roswell Police Department. She answered in the affirmative. The State then asked whether those items "referred to a case involving [Victim] and Manuel Archuleta[.]" Knoll responded "Yes." At which point in time, defense counsel objected, arguing, outside the presence of the jury, that the State impermissibly informed the jury that Defendant was being investigated for another crime with another victim.

The State explained to the district court that Defendant was not yet charged with the shooting of Manuel Archuleta, although he was being investigated for it. The

State had sent the evidence from both shootings together to Knoll to be tested for fingerprints. The State asserted that the use of Archuleta's name in the question was merely for the purpose of identifying the report, the heading of which had both Victim's and Archuleta's names. In response to Defendant's objection, the district court remedied the issue by instructing the jury that, "Manuel Archuleta was mentioned earlier. Manuel Archuleta has nothing to do with this case or this Defendant. You are to disregard any mention of Manuel Archuleta." Defendant did not object to the instruction and Archuleta's name was not mentioned again during the trial.

Based upon these facts, we conclude that the district court's instruction was sufficient, and a mistrial was unnecessary. First, the information provided to the jury only indicated that the fingerprinting expert had received the evidence in a case involving two victims. Contrary to Defendant's contentions, there was no indication made to the jury that Defendant was being investigated for or charged with a crime committed against Manuel Archuleta.

Second, the district court effectively remedied any potential juror confusion or prejudice through its curative instruction. Through that instruction, the district court ordered the jury to disregard the mention of Archuleta's name and indicated that it had no association with the present case against Defendant. We presume that the jury

11

"understood and complied with the court's instructions" to ignore the State's mention of Archuleta. *Jolley v. Energen Res. Corp.*, 2008-NMCA-164, ¶ 28, 145 N.M. 350, 198 P.3d 376 (internal quotation marks and citation omitted); *see State v. Benally*, 2001-NMSC-033, ¶ 21, 131 N.M. 258, 34 P.3d 1134. The district court determined that this instruction was sufficient to cure any potential prejudice resulting from the State's question to Knoll. We are satisfied that in making this determination, the district court did not abuse its discretion, as the ruling appears to be justified by reason, and consistent with the logic and effect of the facts and circumstances of this case. Thus, we affirm the district court's denial of Defendant's motion for a mistrial.

**C.     Defendant's Claim of Ineffective Assistance of Counsel is Best Addressed Via a Petition For Habeas Corpus**

Lastly, Defendant argues that he received ineffective assistance of counsel in violation of the Sixth Amendment because his trial counsel failed to properly investigate and interview potential witnesses. For Defendant to establish a prima facie case of ineffective assistance of counsel, he must show that (1) his counsel's performance fell below that of a reasonably competent attorney, and (2) he was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. In the absence of proof that both defense counsel's performance was not reasonably competent, and the defense was prejudiced as a

12

result, we presume counsel to be effective. *State v. Trujillo*, 2002-NMSC-005, ¶ 38, 131 N.M. 709, 42 P.3d 814; *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127 (providing that counsel is presumed competent). The burden remains with Defendant to establish each element. *Lytle v. Jordan*, 2001-NMSC-016, ¶ 25, 130 N.M. 198, 22 P.3d 666. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

Here, Defendant argues that his counsel was ineffective for failing to investigate three witnesses. Defendant's sole support for this contention is that, "[a]ccording to [him], these three [witnesses] would have testified that they were with him at the party and that Defendant was not the one who fired the shot." Yet, Defendant provides no basis on the present *record* that the witnesses would have supported Defendant's defense.

"If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* (stating that an example of where there often is not a prima facie showing is where "the defendant . . . claims. . . that his counsel failed to adequately investigate"). Without a more

developed record, we are unable to determine whether Defendant can present evidence to support the theory that there was an ineffective assistance of counsel error resulting in prejudice toward him. Thus, Defendant has failed to establish a prima facie case for ineffective assistance of counsel.

Defendant must pursue the issue, if at all, in a collateral habeas corpus proceeding. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 ("This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel."); *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the trial court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus.").

**III.    CONCLUSION**

For the reasons explained above, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

14

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**