Certiorari Denied, June 2, 2014, No. 34,688

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-062

Filing Date: April 23, 2014

Docket No. 32,203

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

GILBERT MELENDREZ,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY
Freddie J. Romero, District Judge

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}** Defendant Gilbert Melendrez raises numerous claims of error in connection with his convictions stemming from an automobile accident. We address, in particular, whether Defendant's convictions of both homicide by vehicle under NMSA 1978, Section 66-8-101(A) (2004), and knowingly leaving the scene of an accident involving great bodily harm or death under NMSA 1978, Section 66-7-201(C) (1989), violate Defendant's double

1

jeopardy protection against multiple punishments for the same offense. We hold that these convictions do not violate Defendant's double jeopardy rights and, accordingly, affirm the judgment of the district court. Defendant also challenges the sufficiency of the evidence underlying his convictions for intentional child abuse by endangerment, tampering with evidence, vehicular homicide, and knowingly leaving the scene of an accident. He additionally challenges the court's refusal to change his trial venue, admission into evidence of a taped interview he gave to the police, admission into evidence of the phone calls with his wife from jail, and determination that the homicide by vehicle offense was a serious violent offense. All claims of error raised by Defendant fail. Accordingly, we affirm the judgment of the district court.

**BACKGROUND**

**{2}**     Defendant was convicted in connection with an accident in which a red pickup truck was driven toward a group of "trick or treaters." Their chaperone, Leora Dyess, pushed the children out of the way but was struck and killed by the truck. The driver left the scene, eluding a motorist who observed the accident and then gave chase.

**{3}**     Witnesses were able to describe the truck in some detail. Acting on a tip, police obtained a search warrant and impounded Defendant's truck. Shards found at the scene matched damage on Defendant's truck. Details of Defendant's truck were consistent with the description offered by the eyewitnesses to the accident. Through inspection by an alternative light-source, Defendant's truck was found to have been wiped clean on the front only.

**{4}**     Defendant was arrested and, at trial, maintained that he loaned his truck to a friend on the evening of the accident. After hearing the evidence, including testimony of witnesses at the scene of the accident, a jury found Defendant guilty of homicide by vehicle, negligent child abuse not causing death or great bodily harm, failure to give immediate notice of an accident, knowingly leaving the scene of an accident involving great bodily harm or death, driving with a suspended license, and tampering with evidence. Defendant raises seven issues on appeal that we address in turn.

**DOUBLE JEOPARDY**

**{5}**     Defendant contends that his separate convictions of homicide by vehicle and knowingly leaving the scene of an accident involving great bodily harm or death violate the double jeopardy clause of the Fifth Amendment of the United States Constitution. The double jeopardy clause provides that no person can be put in jeopardy of life or limb twice for the same offense. U.S. Const. amend. V. As a constitutional question of law, we review a double jeopardy challenge de novo. *State v. Swick,* 2012-NMSC-018, ¶ 10, 279 P.3d 747.

**{6}**     The double jeopardy clause prohibits three distinct categories of multiple punishments: "(1) a second prosecution for the same offense after acquittal, (2) a second

prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Montoya*, 2013-NMSC-020, ¶ 23, 306 P.3d 426 (internal quotation marks and citation omitted). This case implicates the third category, which is further divisible into two sub-categories: (1) cases in which a defendant is charged with more than one violation of the same statute—so called, "unit of prosecution cases"; and (2) cases in which a defendant faces multiple convictions under different statutes—"double-description cases." *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (internal quotation marks omitted). Because Defendant challenges two convictions under different statutes for what he contends is the same conduct, Defendant's double jeopardy appeal raises a double-description issue.

**{7}** Double-description cases are subject to the two-part analysis elucidated in *Swafford v. State*, 1991-NMSC-043, ¶¶ 8-9, 25, 112 N.M. 3, 810 P.2d 1223. *See also Swick*, 2012-NMSC-018, ¶ 11 (stating that the two-part test from *Swafford* governs double-description cases). The touchstone of the double-description analysis is legislative intent. *State v. Frazier*, 2007-NMSC-032, ¶ 18, 142 N.M. 120, 164 P.3d 1. When the Legislature intends multiple punishments under different statutes, there is no double jeopardy violation. *See Swafford*, 1991-NMSC-043, ¶ 25 ("[T]he sole limitation on multiple punishments is legislative intent[.]"). The first inquiry is whether the conduct underlying the convictions was, in fact, the same; that is, whether the conduct was "unitary." *Swick*, 2012-NMSC-018, ¶ 11. If the conduct was not unitary, the inquiry stops because there is no double jeopardy violation. *Id.* If it was unitary, we consider whether the Legislature intended to create separate punishments for the crimes at issue. *Montoya*, 2013-NMSC-020, ¶ 29.

**{8}** "To determine whether a defendant's conduct was unitary, we consider such factors as whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104. Conduct is not unitary if "the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Saiz*, 2008-NMSC-048, ¶ 30, 144 N.M. 663, 191 P.3d 521 (internal quotation marks and citation omitted), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783.

**{9}** Defendant argues that, under the authority of *State v. Franklin*, 1993-NMCA-135, 116 N.M. 565, 865 P.2d 1209, the conduct giving rise to his convictions for homicide by vehicle and knowingly leaving the scene of an accident resulting in death or bodily injury is unitary. In *Franklin*, the defendant shot someone during a game of "quick draw." *Id.* ¶ 2. The state charged the defendant with involuntary manslaughter by negligent use of a firearm and also sought a sentence enhancement based on the use of a firearm in the commission of the offense. *Id.* We held that the conduct was unitary because the use of the firearm was the basis for both the charge and the enhancement. *Id.* ¶ 5. Defendant contends that this case is like *Franklin* and that his conduct is unitary because the "identical act of causing the car accident and killing Ms. Dyess" was the basis of the convictions for both vehicular homicide and knowingly leaving the scene of an accident involving great bodily

harm or death. We do not agree.

{10} The unitary conduct analysis in this case is unlike *Franklin* because in that case there was only a single, undelimited, criminal act—the defendant's shooting of his quick-draw partner. The defendant in *Franklin* was charged with a crime, and the state sought a sentence enhancement based on the use of a firearm during the commission of the crime. In this case, Defendant, by definition, completed one crime—causing the accident that killed Ms. Dyess—before beginning the other by fleeing from the accident. Furthermore, evidence was presented that Defendant paused after running over Ms. Dyess prior to driving away. With the exception of instances in which the Legislature has intended to make two offenses unitary by definition,[1] when there is an identifiable point between the completion of one crime and the beginning of the other, conduct is not unitary and multiple punishments are authorized. *See DeGraff*, 2006-NMSC-011, ¶ 27 (stating that conduct is not unitary and multiple punishments are authorized when there is "an identifiable point at which one of the charged crimes ha[s] been completed and the other not yet committed").

{11} Also, the two statutes at issue are designed to protect against distinct evils, indicating that our Legislature intended to proscribe different units of conduct. *See Frazier*, 2007-NMSC-032, ¶¶ 19, 23 (stating that the unitary conduct issue is dependent on what the Legislature intended as the unit of conviction and that, ultimately, the space-time analysis of a defendant's criminal acts informs the legislative intent analysis). Section 66-8-101(A) punishes reckless driving that results in significant bodily harm or, as in this case, death, to another. Section 66-7-201(C) addresses the harm caused by drivers who knowingly leave the scene of an accident involving great bodily harm or death and fail to fulfill the duty to render aid and provide pertinent identification information. Under Section 66-7-201(C), the driver's culpability for the accident is not relevant. Under Section 66-8-101(A), it does not matter whether a driver renders aid or flees. Additionally, in accordance with the fact that the two statutes address different harms, the goals and mental states of drivers who violate these two statutes are likely to be different. *See State v. Franco*, 2005-NMSC-013, ¶ 7

---

[1]Felony murder is an example of a statute rendering conduct that might otherwise fail to meet the test for unitary conduct as unitary by definition. *See Frazier*, 2007-NMSC-032, ¶ 23 (stating that the felony murder statute and its paired jury instruction "renders the conduct supporting the felony murder and the underlying predicate felony unitary by definition"); *see also State v. Sotelo*, 2013-NMCA-028, ¶ 19, 296 P.3d 1232 (restating the analysis in *Frazier* and concluding that "*Frazier*'s holding means that a defendant can never be convicted of both felony murder and the predicate felony because the conduct is always unitary"), *cert. denied*, 2013-NMCERT-001, 299 P.3d 863. Another example, taken from Ohio and noted by our Supreme Court in *Frazier*, is a statutory scheme in which "statutes on auto theft and joyriding defin[ing] the theft and operation of a single car as a single offense." *Frazier*, 2007-NMSC-032, ¶ 20. Such a framework means that a defendant could not be convicted of both auto theft and joyriding of a single car even when the conduct supporting each took place at different times and places. *Id.*

(stating that a defendant's goals for and mental states during each act are relevant to the unitary conduct analysis). In this case, Defendant both attempted to evade responsibility for the accident he caused when he fled the scene and shirked his duty to render aid to Ms. Dyess. Although it may not be possible to know Defendant's mental state during the vehicular homicide, he could not possibly have sought to evade responsibility for an accident that had not yet occurred.

**{12}** Defendant also argues that, because he was convicted for causing the death of Ms. Dyess, his sentence for leaving the scene of an accident cannot be "enhanced" for the same death. This argument is unpersuasive for two reasons. First, we cannot agree with Defendant's contention that his sentence was enhanced. *Franklin*, cited by Defendant, is instructive. In *Franklin*, the state charged the defendant with manslaughter by negligent use of a firearm and also sought to enhance any sentence imposed by one year for use of the firearm during the commission of the offense. 1993-NMCA-135, ¶ 2. Unlike *Franklin*, in this case, Defendant received two different sentences for his two crimes.

**{13}** Second, we agree with Defendant to the extent that the death of Ms. Dyess is a common element in the requisite findings for guilt by the jury between the two statutes. Were we to find unitary conduct and then continue to the second part of the *Swafford* double jeopardy analysis for multiple punishment cases—which requires a determination of whether the statutes at issue define the same offense—the commonality would be relevant to our analysis. *See Swafford*, 1991-NMSC-043, ¶¶ 10, 30 (stating that in order to determine whether a single criminal act in violation of two distinct statutory provisions constitutes a single offense, a court must, by comparison of the two statutes, determine whether each statute requires proof of a fact that the other does not). But, for the reasons stated above, Defendant's conduct giving rise to the convictions was non-unitary and this determination ends our inquiry. *See id.* ¶ 28 (stating that a finding that the conduct was non-unitary ends the inquiry); *see also* George C. Thomas III, *A Unified Theory of Multiple Punishment*, 47 U. Pitt. L. Rev. 1, 13 (1985) (stating that "[i]f the conduct is nonunitary . . . the definitional question [of whether two statutes define the same offense] is extraneous"). The convictions for both homicide by vehicle and leaving the scene of the accident do not create a double jeopardy violation.

## INTENTIONAL CHILD ABUSE BY ENDANGERMENT

**{14}** Defendant contends that his conviction for intentional child abuse by endangerment was error because it was not supported by sufficient evidence. Defendant argues that his reckless driving did not endanger particular and identifiable children, as required to support the conviction under *State v. Gonzales*, 2011-NMCA-081, 150 N.M. 494, 263 P.3d 271, *aff'd on other grounds*, 2013-NMSC-016, 301 P.3d 380, but, instead, endangered the public as a whole. Defendant further argues that he did not act with the requisite intent to support the conviction for intentional child abuse.

**{15}** Sufficient evidence to support a conviction is that which, when viewed in the light

5

most favorable to the guilty verdict, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Gallegos*, 2009-NMSC-017, ¶ 30, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citation omitted). Under this standard of review, all reasonable inferences are indulged and all conflicts in the evidence are resolved in favor of the verdict. *Id.*

**{16}** Our child abuse by endangerment statute, NMSA 1978, § 30-6-1(D)(1) (2009), is "intended to address conduct with potentially serious consequences to the life or health of a child." *Gonzales*, 2011-NMCA-081, ¶ 16 (internal quotation marks and citation omitted). The statute gives heightened protection to children because they are inherently vulnerable and also because they are at the mercy of the adults who care for them. *Id.* ¶ 23. For conviction, the statute requires a "reasonable probability or likelihood that the child's life or health would be endangered by the defendant's conduct." *Id.* ¶ 18. It requires a "substantial and foreseeable" risk of harm to the child. *Id.* (internal quotation marks and citation omitted). The standard of criminally negligent child abuse "requires that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." *Garcia v. State*, 2010-NMSC-023, ¶ 33, 148 N.M. 414, 237 P.3d 716 (internal quotation marks and citation omitted).

**{17}** In *Gonzales*, the defendant drove while severely intoxicated, collided with the rear of another car and, in so doing, injured one child and killed another who were seated in the back seat of the other car. 2011-NMCA-081, ¶ 4. That driver's convictions for negligent child abuse by endangerment were reversed because "she was not proven to be aware of the danger to the particular children who were the victims of her . . . driving." *Id.* ¶ 2. Based on *Gonzales*, Section 30-6-1(D) requires that a defendant create a discernable, particular risk or danger to a particular or identifiable child or children. *Gonzales*, 2011-NMCA-081, ¶ 1. The creation of a risk to the general public that only incidentally places a child or children in danger is not sufficient to support a conviction. *Id.* ¶¶ 22-23. Defendant argues that, like the driver in *Gonzales*, the danger he posed was not directed toward the children and was indistinct from the danger posed to the public at large. *See id.* ¶ 27.

**{18}** Indeed, like *Gonzales*, this case involves a driver's conviction for child abuse by endangerment based upon the driver's creation of danger to children who were not in the driver's car. *See id.* ¶ 4. But, this case is distinguishable from *Gonzales* because Defendant created a substantial and foreseeable risk to particular children by driving into a group that contained nine children. Defendant does not argue that he did not see the children. Furthermore, there was evidence indicating that the group was visible to motorists in that the driver of the car who drove down the street just prior to Defendant saw the group of trick or treaters, slowed down, and navigated around them. There was also evidence that Defendant altered his course and drove toward the group. Defendant's actual or constructive awareness of the presence of the children is dispositive. *See id.* ¶ 11 (noting that awareness of the presence of a child prior to the creation of the risk was dispositive because the risk to the child is, therefore, foreseeable). The jury heard sufficient evidence to conclude that Defendant knew or should have known that his conduct created a substantial and foreseeable

6

risk of injury to the nine children that he drove toward.

**{19}** Defendant also contends that the evidence fails to support the jury's finding that he acted intentionally and that the State failed to present any evidence to sustain this element of the conviction. The jury was instructed that "[a] person acts intentionally when he purposely does an act which the law declares to be a crime." Because a person's intent is rarely established by direct proof, it may be proven by circumstantial evidence. *State v. Nozie*, 2009-NMSC-018, ¶ 32, 146 N.M. 142, 207 P.3d 1119.

**{20}** Circumstantial evidence was presented that Defendant purposely committed a criminal act. An eyewitness testified that Defendant steered toward the group of children and increased his speed. There was also testimony that a witness heard someone say "We got them. Go go go." Under our sufficiency of the evidence standard of review, the testimony supports the jury's finding that Defendant acted intentionally. We affirm the conviction for intentional child abuse by endangerment under Section 30-6-1(D)(1).

**ADDITIONAL SUFFICIENCY OF THE EVIDENCE CHALLENGES**

**{21}** Defendant also challenges the sufficiency of the evidence for his convictions for tampering with evidence, vehicular homicide, and knowingly leaving the scene of an accident.

**{22}** With respect to his conviction for tampering with evidence, Defendant argues that, in the absence of an eyewitness testifying that Defendant removed the stickers on his truck and with only one witness, an admitted drug user, who saw Defendant wash his truck the morning after the accident took place, the evidence was insufficient. The test for whether there is sufficient evidence to support a conviction "is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (internal quotation marks and citation omitted). There was circumstantial evidence that when police took custody of Defendant's truck it had been recently altered. A detective testified that, using an alternative light-source, it was determined that the front of the truck had been recently cleaned. Unlike most of the truck, which was covered in light dust, the front of the truck had recent wipe marks. There was glue residue in an area where decals had, perhaps, been removed. The fact that the eyewitness to Defendant's clean-up was a drug user is not relevant to us because we will not reweigh the evidence. *See State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 (stating that this Court will not weigh the evidence on appeal). Sufficient evidence supported the verdict of the jury that Defendant tampered with the evidence.

**{23}** Defendant next contends that his convictions for vehicular homicide and leaving the scene of an accident were not supported by sufficient evidence. The only eyewitness to identify Defendant as the driver changed her testimony on the day of trial. Thus, Defendant argues her identification was faulty. According to Defendant, his friend borrowed the truck

7

on the night of the accident. The jury heard evidence indicating that Defendant believed he hit someone with his truck, heard Defendant refer to details of the scene of the accident, and heard Defendant fault Ms. Dyess for being in the road. The jury also heard testimony from the employer of the person who Defendant contended borrowed the truck. That testimony contradicted Defendant's version of events. Defendant also had the opportunity to cross-examine the eyewitness who identified him and in so doing explored the inconsistencies in her identification. Sufficient evidence was presented that a reasonable jury could have found that Defendant was the driver of the truck involved in the accident, the sole element of the conviction challenged by Defendant.

**CHANGE OF VENUE**

**{24}**    Because of local media coverage of the events that led to this case, Defendant moved for a pre-trial change of venue. The court heard and then denied the motion. Defendant argues that the court's refusal to change the venue denied him a fair and impartial jury and, therefore, violated his rights under the constitutions of both New Mexico and the United States.

**{25}**    A trial court's discretion is broad in deciding whether to grant a non-mandatory change in venue. *State v. House*, 1999-NMSC-014, ¶ 31, 127 N.M. 151, 978 P.2d 967. Absent an abuse of discretion, a trial court's decision about venue will not be disturbed. *Id.* A trial court abuses its discretion when its determination of venue is not supported by substantial evidence in the record. *State v. Gutierrez*, 2011-NMSC-024, ¶ 39, 150 N.M. 232, 258 P.3d 1024. The party appealing the change of venue has the burden of proving actual prejudice. *Id.* A trial court may elect to grant a change in venue based on a showing of presumed prejudice, but when a court "determines that a movant has not demonstrated presumed prejudice and proceeds with voir dire, we will limit our review to the evidence of actual prejudice." *State v. Barrera*, 2001-NMSC-014, ¶ 16, 130 N.M. 227, 22 P.3d 1177.

**{26}**    In the case before us, the court called two jury panels for selection and conducted voir dire.  Therefore, we review for substantial evidence in support of the court's determination that there was not actual prejudice and that an impartial jury could be obtained within the venue. During voir dire, the court asked pointed questions to potential jurors who had heard of the case, including questions that asked those jurors to assess the impact of the publicity on their ability to be fair and whether they could evaluate the evidence without reference to information external to the court proceeding. The court asked jurors whether they had come to any conclusions about who was responsible for the accident. Defendant also had an opportunity to question jurors. Defendant does not point to any actual prejudice on the part of any juror. Because the court made substantial inquiry into juror prejudice and Defendant does not point to any actual prejudice in the pool, the court did not abuse its discretion in refusing to change the venue. *See Gutierrez*, 2011-NMSC-024, ¶ 39.

**ADMISSION AT TRIAL OF DEFENDANT'S TAPED INTERVIEW**

**{27}**     After Defendant's arrest, he requested to speak with the police and prosecutor.  He was read his *Miranda* rights and told that his interview would be recorded.  At trial, Defendant made a general objection to playing the entire, nearly two-hour, interview.  He argued that the evidence should instead be introduced through the live testimony of the officers.  In response to the court's inquiry, the State explained that the interview only discussed the day of the accident and a few days following.  The court found that the statement was made voluntarily after Defendant properly waived his right to remain silent and that because the interview discussed the incident and the aftermath, it was probative.  After the tape was played, Defendant moved for a mistrial because the interview revealed that Defendant had been to prison and had a long driving record and a suspended license.  Defendant did not ask for a curative instruction.  The court denied the motion for a mistrial, stating that Defendant, who had the interview and a transcript prior to trial, made only a general objection and did not identify these issues to the court.  On appeal, Defendant argues that the video should not have been played in its entirety and renews his objection to the specific parts of the interview he finds prejudicial.  Specifically, Defendant objects that evidence of "prior alcohol use or convictions" was not relevant to the charge of vehicular homicide by reckless driving and constituted impermissible character evidence.

**{28}**     When a claim that evidence has been erroneously admitted is preserved by objection, we review the evidentiary rulings of a court for an abuse of discretion.  *See State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641.  But when an evidentiary claim of error is not preserved by timely objection, we review for plain error.  *State v. Torres*, 2005-NMCA-070, ¶ 9, 137 N.M. 607, 113 P.3d 877.  Because Defendant's objection before the tape was played was not sufficiently specific to elicit a fair ruling as to the admission of the portions of the interview that he claims on appeal were error, we do not review for an abuse of discretion, but, instead, for plain error.  *See State v. Young*, 1985-NMCA-079, ¶ 30, 103 N.M. 313, 706 P.2d 855 ("[I]t is the duty of counsel to alert the court to the specific basis for the objection, so that the court may rule intelligently.").

**{29}**     The plain error rule applies only if an alleged error affected the substantial rights of the accused.  *State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071.  We find plain error "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Torres*, 2005-NMCA-070, ¶ 9 (internal quotation marks and citation omitted).  Moreover, improperly admitted evidence is grounds for a new trial only if the error was harmful.  *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110.

**{30}**     Even if we assume that the admission of the disputed statements was error, such admission was harmless.  "[H]armless error review necessarily requires a case-by-case analysis . . . . [It] requires an appellate court to review the effect of an error in the unique context of the specific evidence presented at a given trial." *Id.* ¶ 44 (internal quotation marks and citation omitted).  A non-constitutional error is not harmless when, under the totality of the circumstances, there is a reasonable probability that the impermissible evidence contributed to the defendant's conviction. *State v. Garcia,* 2013-NMCA-064, ¶ 17, 302 P.3d

111, *cert. denied*, 2013-NMCERT-004, 301 P.3d 858.

**{31}**     The evidence of Defendant's guilt is overwhelming, and the minor error asserted by Defendant does not cause us to doubt the validity of the verdict. *See State v. Contreras*, 1995-NMSC-056, ¶¶ 22, 24, 120 N.M. 486, 903 P.2d 228 (holding that when a defendant was asked about previous charges that, in fact, had been dismissed, no doubt about the "firmness of the verdict" was created and, thus, no plain error). Defendant stipulated that his license was revoked, and therefore the jury was aware of this fact. The jury heard testimony about the accident from numerous eyewitnesses, testimony that Defendant was in the vicinity just before the accident and was drinking, and statements by Defendant expressing familiarity with the scene of the accident. Shards found at the scene matched Defendant's truck, and evidence was presented that the front of his truck had been recently wiped. Defendant's alibi was contradicted by the testimony of the person who, on the day of the accident, employed the person accused by Defendant. There is no reasonable probability that Defendant was convicted because the jury very briefly heard of Defendant's prior convictions for driving while intoxicated.

**{32}**     In the alternative, Defendant contends that he received ineffective assistance of counsel. Defendant asserts two different claims. First, that his initial attorney, who was subsequently disbarred for apparently unrelated matters, was ineffective when he allowed Defendant to give the interview. Defendant's assertion refers to matters not in the record before us. Without a record, we cannot determine why or under what circumstances Defendant chose to give the interview. When "a plausible, rational strategy or tactic can explain the conduct of defense counsel[,]" there is no prima facie case for ineffective assistance of counsel. *State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (internal quotation marks and citation omitted). Because this claim concerns matters not in the record, it is best brought in a habeas corpus proceeding. *See id.* (expressing a preference for habeas corpus proceeding over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel).

**{33}**     Defendant also contends that his attorney was ineffective when he did not object specifically to the admission of the portions of the interview that referred to his revoked license and to prior incidents of driving while intoxicated. A prima facie case of ineffective assistance of counsel requires that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the trial would have been otherwise. *Lytle v. Jordan*, 2001-NMSC-016, ¶ 27, 130 N.M. 198, 22 P.3d 666. Our analysis of the effect of the admission of the evidence that Defendant claims that his attorney should have been able to exclude is dispositive of this claim of error. Even if Defendant's attorney was so deficient in the failure to exclude this evidence that this attorney's performance was objectively unreasonable, there is no reasonable probability that the outcome would have been different.

## ADMISSION OF THE RECORDED CALLS BETWEEN DEFENDANT AND HIS WIFE

**{34}** Defendant contends that the court erred in allowing the State to play short portions of telephone calls to his wife that were recorded while he was in jail awaiting trial. Defendant asserts that these calls were recorded in violation of his federal and state constitutional rights to be free from unreasonable search and seizure because they were recorded without a warrant. According to Defendant, the admission of this improperly seized evidence entitles him to a new trial. However, there was testimony that all the free phone calls from jail, which were voluntary, begin with an explanation that all calls would be recorded and monitored. Under these circumstances, there could be no reasonable expectation of privacy and no unreasonable search or seizure or violation of Defendant's privacy rights. *See State v. Coyazo*, 1997-NMCA-029, ¶ 18, 123 N.M. 200, 936 P.2d 882 (holding that a defendant who had knowledge that his telephone calls from jail were monitored had no reasonable expectation of privacy and, because he implicitly consented, the monitoring did not constitute unreasonable search or seizure).

## DESIGNATION OF THE VEHICULAR HOMICIDE AS A SERIOUS VIOLENT OFFENSE

**{35}** Defendant contends that the court committed error when it determined that his conviction for vehicular homicide was a serious violent offense under the Earned Meritorious Deductions Act (EMDA), NMSA 1978, § 33-2-34 (2006). Defendant argues that the findings of the court were legally inadequate to establish that he committed a serious violent act. Under the EMDA, a person whose conviction is designated a serious violent offense is significantly limited in the amount of meritorious sentence reduction that can be earned. Section 33-2-34(A)(1). While certain crimes are per se serious violent offenses, other crimes are serious violent offenses only when a court finds that the "nature of the offense and the resulting harm" warrants such a finding. Section 33-2-34(L)(4)(a-o). A criminal act in the discretionary category constitutes a serious violent crime when a court finds that the crime was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *State v. Morales*, 2002-NMCA-016, ¶ 16, 131 N.M. 530, 39 P.3d 747, *abrogated on other grounds by State v. Frawley*, 2007-NMSC-057, ¶ 36, 143 N.M. 7, 172 P.3d 144. Homicide by vehicle rests within the discretionary category. *See* § 33-2-34(L)(4)(o)(14). Because Defendant appeals the legal sufficiency of the court's findings but not the sufficiency of the evidence to support those findings, we review only whether the court's findings fulfill the statutory requirements.[2] We review de novo the legal

---

[2]Defendant makes one point challenging the sufficiency of the evidence supporting the findings. Defendant argues that the court's finding that he was driving at a high rate of speed was untenable because it was supported only by lay testimony and not by an accident reconstruction expert. Defendant provides no authority for why the court could rely only on an accident reconstruction expert for such a finding and therefore we conclude that none exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that when a party cites no authority to support an argument, we may assume no such

11

basis for the court's discretionary finding that Defendant's commission of homicide by vehicle was a serious violent offense. *See State v. Scurry*, 2007-NMCA-064, ¶ 4, 141 N.M. 591, 158 P.3d 1034 (stating that although a court's determination of whether a crime is a serious violent offense is discretionary, a court abuses its discretion when it acts contrary to law and, therefore, we engage in de novo review when we review the legal sufficiency of a court's findings in support of a serious violent offense determination).

**{36}** At the sentencing hearing, the court specifically explained the reasons that Defendant's conviction for homicide by vehicle was a serious violent offense:

> This was a driving offense. [Defendant] was driving on a suspended license. He left his father's home with evidence that there had been drinking. He had four previous convictions for DWI, driving down a residential street at a high rate of speed, Halloween evening, with children and adults on the street, and it was dark. [He] stopped the vehicle and then left the scene.

Defendant argues that the court's findings do not establish the requisite intent to do serious harm or recklessness as evidenced by knowledge that his acts were reasonably likely to cause serious harm because the findings impermissibly rely primarily on the elements of the crime. We do not agree.

**{37}** The jury was instructed that in order to find Defendant guilty of homicide by vehicle, it had to find that Defendant operated a motor vehicle in a reckless manner and thereby caused the death of Ms. Dyess. The court, when it explained its conclusion that Defendant committed a serious violent offense, connected Defendant's awareness of his suspended license and previous convictions for driving offenses with the fact that he had been drinking and driving at a high rate of speed on a residential street on a night when an inordinate number of children were likely to be out. After hitting Ms. Dyess, Defendant chose to leave the scene. The court's findings go well beyond the definitional elements of homicide by vehicle. The specific circumstances outlined by the court established the requisite recklessness in the face of Defendant's knowledge that his actions might result in serious harm. *See State v. Solano*, 2009-NMCA-098, ¶¶ 11, 18, 146 N.M. 831, 215 P.3d 769 (holding that a conviction for homicide by vehicle met the requisite intent to be a serious violent offense when the district court found that the defendant's prior history involving alcohol and alcohol-related offenses and the fact that he crossed the center line, struck the victim, propelled her through the air and into the bed of his truck); *see also State v. Lavone*, 2011-NMCA-084, ¶¶ 2, 10, 150 N.M. 473, 261 P.3d 1105 (holding that a homicide by vehicle demonstrated the requisite recklessness and therefore was a serious violent offense when the defendant left the scene of the accident before calling for aid, thereby exposing the victim to additional harm).

---

authority exists).

12

**CONCLUSION**

**{38}** For the foregoing reasons, we affirm the judgment of the district court.

**{39}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**J. MILES HANISEE, Judge**