This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                             **NO. 33,552**

**JOSEPH NEAL,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1} Defendant, Joseph Neal, appeals from his convictions for trafficking methamphetamine, contrary to NMSA 1978, Section 30-31-20(A)(1) (2006), and

possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). Defendant argues that (1) he received ineffective assistance of counsel, (2) the State presented insufficient evidence to sustain his convictions, (3) his convictions violate the prohibition against double jeopardy, and (4) the district court erred in denying his motion for a mistrial after it read an incorrect charge to the jury. We affirm.

## I.    BACKGROUND

{2}    In the early morning hours of September 24, 2011, Jerry Wheeler, the owner of a storage facility in Alamogordo, New Mexico, drove by the facility and noticed a white vehicle parked outside one of the storage units. Mr. Wheeler saw Defendant exit the storage unit. As Mr. Wheeler approached, he also saw an unidentified woman and noticed that there were mattresses on the floor of the unit. It appeared to Mr. Wheeler that someone may have stayed in the unit overnight. Mr. Wheeler told Defendant and the unidentified woman that he had called the police. Defendant drove away from the storage facility, leaving the woman behind.

{3}    The woman eventually identified herself to Mr. Wheeler as Ameera Itani and told him that she had permission to access the storage unit, which was rented by her mother, Janet Styger. When the police arrived, Ms. Itani was still present at the

storage facility. Mr. Wheeler could not reach Mrs. Styger, so a police officer took Ms. Itani home.

{4}     Mr. Wheeler's wife, Naomi, called Mrs. Styger. Mrs. Styger met the Wheelers at the storage facility and gave them permission to enter the storage unit. Inside the unit, the Wheeler's discovered several items that concerned them including: a bottle of acetone, drain cleaner, muriatic acid, and a backpack, which contained several packages of matches and packages of pills. Mrs. Wheeler and Mrs. Styger placed those items outside the storage unit.

{5}     Police returned to the storage unit and ultimately seized a number of items that appeared to be components of a mobile methamphetamine lab. At least one item, a black scale, seized from the storage unit had methamphetamine residue on it. Defendant was charged with trafficking methamphetamine by manufacturing and possession of drug paraphernalia. Defendant was also charged with abandonment or abuse of a child because his and Ms. Itani's infant was present with them at the storage unit on the morning of September 24, 2011.

{6}     At Defendant's first trial, the district court entered a directed verdict on the child abuse charge. After the case was submitted to the jury, one juror suffered an injury that prevented her from participating in deliberations. Because there were no alternate jurors, the district court declared a mistrial. Defendant was tried a second

time and convicted of trafficking methamphetamine and possession of drug paraphernalia.

**II.    DISCUSSION**

**A.    Ineffective Assistance of Counsel**

{7}    Defendant claims that he received ineffective assistance of counsel because (1) his attorney concurrently represented one of the State's witnesses; and (2) his attorney did not move to disqualify the prosecutor, based on the prosecutor's previous representation of Defendant. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

{8}    "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees . . . the right to the effective assistance of counsel." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "[A]n appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted).

{9} "A prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced." *Patterson*, 2001-NMSC-013, ¶ 17 (internal quotation marks and citation omitted). As to the first prong, "[d]efense counsel's performance is deficient if it falls below an objective standard of reasonableness[,]" usually judged as an action contrary to "that of a reasonably competent attorney." *Dylan J.*, 2009-NMCA-027, ¶ 37. Our review of counsel's performance is "highly deferential" in that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (internal quotation marks and citation omitted). Therefore, a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). "If there is a plausible, rational strategy or tactic to explain counsel's conduct, a prima facie case for ineffective assistance is not made." *Dylan J.*, 2009-NMCA-027, ¶ 39.

{10} As to the second prong, "[a] defense is prejudiced if, as a result of the deficient performance, there was a reasonable probability that . . . the result of the trial would have been different." *Id.* ¶ 38 (omission in original) (internal quotation marks and

5

citation omitted). "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted). The deficient performance "must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *Id.* (internal quotation marks and citation omitted). A defendant is entitled to an evidentiary hearing on his ineffective assistance claim when the record on appeal presents "a prima facie case of ineffective assistance of counsel." *State v. Herrera*, 2001-NMCA-073, ¶ 35, 131 N.M. 22, 33 P.3d 22.

**1.      Defense Counsel's Conflict of Interest**

{11}     Defendant alleges that an actual conflict of interest arose from defense counsel's concurrent representation of Defendant and Ms. Itani, who testified for the State. An ineffective assistance of counsel claim based on defense counsel's conflict of interest is analyzed differently than the "more typical ineffective assistance of counsel claim based on lack of competence and resulting prejudice." *Rael v. Blair*, 2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657. "A defendant must show that counsel, actively represented conflicting interests and that an actual conflict of interest adversely affected his or her lawyer's performance." *Id.* ¶ 11 (alteration, internal quotation marks, and citation omitted). When "counsel is burdened by an actual conflict of interest[,]" prejudice is presumed. *Id.* (internal quotation marks and

6

citation omitted). "In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Id.* (internal quotation marks and citation omitted).

{12}   Although the State does not dispute Defendant's contention that his attorney represented Ms. Itani, who was also charged in connection with the facts giving rise to this case, facts regarding that representation were not made part of the district court record. To the extent that Defendant refers us to https://caselookup.nmcourts.gov/, and suggests that we take judicial notice of court records therein for facts regarding this claim, we decline to do so.

{13}   "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. In order to establish a prima facie case of ineffective assistance, Defendant must establish both attorney error and prejudice by producing "enough evidence to allow the fact-trier to infer the fact at issue and rule in [Defendant's] favor." *State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068 (alteration in original) (internal quotation marks and citation omitted). Because Defendant cannot establish a prima facie case of ineffective assistance based on the facts in the record, we "cannot determine that trial counsel provided constitutionally ineffective assistance." *Id.* ¶ 15.

## 2.      Prosecutor's Conflict of Interest

{14}      Defendant claims that defense counsel provided ineffective assistance when he failed to move to disqualify the prosecuting attorney. After Defendant's trial, the State filed a supplemental criminal information concerning Defendant's status as a habitual offender. At the arraignment on the supplemental information, defense counsel informed the district court that Defendant believed that the prosecutor had a conflict of interest. The exchange between counsel and the court proceeded as follows:

> Counsel: One of the other things that my client has raised, and it came up this morning, is the idea that, well, I'll do it by motion, in regard that [Defendant] feels that there's been a conflict in regard to the prosecution of this case since [the prosecutor] represented [Defendant] in three previous hearings, three other charges when he worked for Mr. Mitchell. But I'll do that by motion.
>
> Court: Well. You can file your motion on that.

{15}      Counsel never filed a motion concerning the prosecutor's alleged conflict. Defendant argues that counsel's failure to seek  disqualification of constituted ineffective assistance of counsel. Specifically, Defendant argues that because the prosecutor represented him previously, the prosecutor was privy to confidential information about Defendant that could have been used against him. However, Defendant did not raise the issue of the prosecutor's alleged conflict until the habitual offender proceeding—well after the trial and multiple hearings had concluded in this

8

case. And the evidence concerning counsel's performance is not fully developed in the record.

{16} Because the record before us is does not contain the facts necessary to review either Defendant's ineffective assistance of counsel claims, we conclude that both claims are more appropriately brought through a habeas corpus petition. *See id.* ¶ 14; *see also Crocco*, 2014-NMSC-016, ¶ 24 (noting that "[i]f facts beyond those in the record on appeal could establish a legitimate claim of ineffective assistance of counsel, [the d]efendant may assert it in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues.").

**3.     Prosecutor's Failure to Disclose Potential Conflict of Interest**

{17} It is important to note that while it was the Defendant who raised the prosecutor's conflict of interest in this case, we find it peculiar that the prosecutor proceeded through trial and sentencing without alerting the district court to the potential conflict of interest arising from his prior representation of Defendant. We are troubled that the prosecutor did not disclose the potential conflict of interest to the district court himself.

{18} This Court has acknowledged the significant risk of a conflict of interest where a prosecuting attorney represents the state in a case against that attorney's former

client. *See State v. Barnett*, 1998-NMCA-105, ¶¶ 22-24, 125 N.M. 739, 965 P.2d 323. A prosecuting attorney is afforded broad discretion throughout a criminal prosecution. *State v. Surratt*, 2016-NMSC-004, ¶ 14, 363 P.3d 1204 (recognizing the broad charging authority of prosecuting attorneys); *March v. State*, 1989-NMSC-065, ¶ 4, 109 N.M. 110, 782 P.2d 82 (acknowledging that a "prosecutor has discretion to seek or not to seek enhanced sentencing"); *State v. Gardea*, 1999-NMCA-116, ¶ 5, 128 N.M. 64, 989 P.2d 439 ("It is generally accepted that the prosecutor has wide discretion to dismiss criminal charges."). The risk that confidential information revealed during the prior representation will be used against the defendant is heightened, particularly when the prosecuting attorney is called upon to make discretionary decisions in the course of the criminal prosecution. *See Barnett*, 1998-NMCA-105, ¶ 22.

{19} As with all lawyers, a prosecutor's conduct should always be constrained by his duty to avoid even an appearance of impropriety. *See Leon, Ltd. v. Carver*, 1986-NMSC-015, ¶ 10, 104 N.M. 29, 715 P.2d 1080. A prosecutor's responsibility, however, exceeds that of an advocate. *See* Rule 16-308 NMRA Committee Commentary (stating that a prosecutor, "has responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice"). And our Supreme Court has

10

recognized that prosecutors generally have a duty to timely disclose potential conflicts of interest. *Rael*, 2007-NMSC-006, ¶ 27 (noting that when prosecutors fulfill their duty to timely disclose potential conflicts of interest, they enable the trial judge to evaluate potential conflicts, decide motions to disqualify, and rule appropriately on waivers and thus avoid problems arising later in trial or retrials).

{20} Moreover, the Rules of Professional Conduct mandate that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 16-109(A) NMRA. This protects the former client "the risk that a lawyer may inadvertently use the confidences or secrets of a former client against him." *Leon, Ltd.*, 1986-NMSC-015, ¶ 10.

{21} For purposes of the integrity of the profession and in the interest of justice, the prosecutor had an affirmative duty to alert the court that he had previously represented Defendant and the context in which he represented Defendant. The duty to timely disclose potential conflicts of interest is not fulfilled by sitting idle.

**B.    Sufficiency of the Evidence**

{22} Defendant claims that the State presented insufficient evidence to sustain his convictions. When we review Defendant's claim of insufficiency of the evidence, "we

[must] determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime." *State v. Brenn*, 2005-NMCA-121, ¶ 4, 138 N.M. 451, 121 P.3d 1050. We must also "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. In that light, the Court determines whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citations omitted). Defendant asserts no challenge to the propriety of the jury instructions at his trial. Thus, if the evidence received at trial included "such relevant evidence as a reasonable mind might accept as adequate to support" the facts required by these instructions, Defendant's challenge to the sufficiency of that evidence must fail. *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).

**1.      Trafficking Methamphetamine by Manufacturing**

{23}      In relevant part, the jury instruction on trafficking by manufacturing provided that in order to find Defendant guilty of trafficking methamphetamine by manufacturing, the State had to prove beyond a reasonable doubt, that on or about September 24, 2011, Defendant manufactured methamphetamine, knowing that it was

methamphetamine. The jury was also instructed on accomplice liability. Thus, according to the given instruction, Defendant could be found guilty of trafficking methamphetamine by manufacturing if the State proved that the crime was in fact committed; "[D]efendant intended that the crime be committed; [and D]efendant helped, encouraged[,] or caused the crime to be committed."

{24} The evidence at trial included Ms. Itani's testimony that on multiple occasions she and Defendant purchased pseudoephedrine, and Defendant used it to make methamphetamine. Ms. Itani further testified that on September 22, 2011, she and Defendant went to Walgreens to purchase pseudoephedrine, as they had done before. On the evening of September 23, 2011, Ms. Itani drove Defendant to the apartment he shared with his brother. According to Ms. Itani, neither she nor Defendant had methamphetamine at the time she dropped Defendant off, but Defendant took the pseudoephedrine they purchased the day before and was planning to use it to make methamphetamine while he was at the apartment. When Ms. Itani picked Defendant up several hours later, he had methamphetamine and was carrying a backpack she believed to contain materials used in the manufacture of methamphetamine. According to Agent Albert Mora of the New Mexico State Police, who had fourteen years experience as a narcotics officer and was on the methamphetamine lab team for

13

more than ten years, two or three hours is a sufficient time frame in which to produce methamphetamine once all the necessary materials are obtained.

{25} In sum, the State presented evidence Defendant and Ms. Itani regularly purchased pseudoephedrine for him to use in the manufacture of methamphetamine, Defendant did not have methamphetamine with him when Ms. Itani dropped him off at his apartment, Defendant took pseudoephedrine with him to his apartment to use to manufacture methamphetamine, Defendant had methamphetamine with him several hours later when Ms. Itani picked him up, and several hours is enough time to manufacture methamphetamine. Viewing this evidence in the light most favorable to the verdict and drawing all reasonable inferences therefrom, there was sufficient evidence from which the jury could have reasonably concluded that Defendant manufactured methamphetamine. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 ("In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict."). Thus, we conclude that Defendant's conviction for trafficking methamphetamine by manufacture is supported by sufficient evidence.

**2.      Possession of Drug Paraphernalia**

14

{26}     In order to convict Defendant of possession of drug paraphernalia, the jury was instructed that it must find, in relevant part, that on or about September 24, 2011, Defendant knowingly had drug paraphernalia, specifically: "mixing containers, muriatic acid, drain cleaner, acetone, matches, a coffee filter[,] and/or a black scale[,]" in his possession, and intended to use such items to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, ingest, [or] inhale" methamphetamine.

{27}     At trial, Ms. Itani identified the backpack police seized from her mother's storage unit as the same backpack Defendant had when she picked him up on September 23, 2011; the same backpack that Defendant left behind when he left the storage unit on September 24, 2011. Agent Mora testified that the black scale, which contained pseudoephedrine and methamphetamine residue was taken from Defendant's backpack on September 24, 2011, prior to being photographed and seized. Based on the testimony, we conclude that there was sufficient evidence to support Defendant's conviction for possession of drug paraphernalia. *See id.*

**C.     Double Jeopardy**

**1.     Defendant's Convictions Do Not Violate Double Jeopardy**

{28}     Defendant argues that his convictions for trafficking by manufacturing and possession of paraphernalia violate the prohibition against double jeopardy because

15

the same evidence formed the basis of both convictions. Defendant took particular issue with the language of the two jury instructions in that "the items that formed the basis for the paraphernalia conviction are the items used to manufacture methamphetamine."

**{29}** "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Fifth Amendment of the United States Constitution, made applicable to New Mexico by the Fourteenth Amendment, prohibits double jeopardy and "functions in part to protect a criminal defendant against multiple punishments for the same offense." *Id.* (internal quotation marks and citation omitted). Double jeopardy cases involving multiple punishments are classified as either double-description cases, "where the same conduct results in multiple convictions under different statutes," or unit-of-prosecution cases, "where a defendant challenges multiple convictions under the same statute." *Id.* The present case is a double-description case because Defendant challenges two convictions under different statutes for what he claims is the same conduct.

**{30}** Double-description cases involve a two-part analysis. *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. First, we consider "whether the conduct underlying the offenses [was] unitary." *Id.*; *see Swick*, 2012-NMSC-018,

16

¶ 11; *State v. Melendrez*, 2014-NMCA-062, ¶ 7, 326 P.3d 1126. "[R]eviewing whether conduct is unitary in the double jeopardy context, we indulge in all presumptions in favor of the verdict." *State v. Herrera*, 2015-NMCA-116, ¶ 12, 362 P.3d 167 (internal quotation marks and citation omitted), *cert. denied*, 2015-NMCERT-010, 369 P.3d 372. If the conduct is not unitary, there is no double jeopardy violation. *See State v. Contreras*, 2007-NMCA-045, ¶ 20, 141 N.M. 434, 156 P.3d 725. If the conduct is unitary, we must determine "whether the [L]egislature intended to create separately punishable offenses." *Swafford*, 1991-NMSC-043, ¶ 25.

{31}    Turning to the first prong of our analysis, whether the conduct was unitary we review the elements of the charged offenses. *State v. Vance*, 2009-NMCA-024, ¶ 13, 145 N.M. 706, 204 P.3d 31. Then we consider whether the facts presented at trial are sufficient to support the elements of both crimes. *Id.* "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted); *see State v. Olsson*, 2014-NMSC-012, ¶ 37, 324 P.3d 1230 ("In a double[-]description case the primary inquiry is whether the facts presented at trial establish that the jury *reasonably* could have inferred independent factual bases for the charged offenses." (internal quotation marks and citation omitted)).

{32} Here, Ms. Itani testified that she accompanied Defendant to Walgreens, where they purchased pseudoephedrine for Defendant to use in making methamphetamine, on September 23, 2011, she dropped Defendant off with the pseudoephedrine so Defendant could make methamphetamine, and when she returned to pick Defendant up three or four hours later he had methamphetamine. Itani's testimony, together with Agent Mora's testimony that methamphetamine can be produced in two or three hours, provides a factual basis to support the trafficking by manufacturing conviction.

{33} Evidence was also presented that Defendant's backpack that was retrieved from the storage unit contained pseudoephedrine pills and matches, which can be used to manufacture methamphetamine, and a scale that had methamphetamine residue on it. This evidence supports the State's theory that Defendant had drug paraphernalia, specifically, "matches . . . and . . . a black scale," in his possession, that he intended to use to "manufacture, compound, convert, produce, process, prepare, test, [or] analyze" methamphetamine. In other words, Defendant had the ingredients necessary for him to actually make methamphetamine if he so intended, as opposed to the actual manufacturing of the methamphetamine.

{34} From this evidence the jury could have reasonably inferred an independent factual bases for both trafficking by manufacturing and possession of paraphernalia. Thus, we conclude that Defendant's conduct was not unitary and that "the jury

18

reasonably could have inferred independent factual bases for the charged offenses." *Vance*, 2009-NMCA-024, ¶ 13 (internal quotation marks and citation omitted). Because Defendant's conduct was not unitary, we conclude under the first *Swafford* inquiry that double jeopardy principles were not violated. *See State v. Saiz*, 2008-NMSC-048, ¶ 35, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36, 146 N.M. 357, 210 P.3d 783.

**2.      Defendant's Second Trial Did Not Violate Double Jeopardy**

{35}     Defendant also claims that his second trial violated double jeopardy. Specifically, Defendant argues that a juror's unexpected unavailability was not manifestly necessary and, therefore, did not justify a mistrial in his first trial. *See State v. Newman*, 1989-NMCA-086, ¶ 19, 109 N.M. 263, 784 P.2d 1006 (noting that "when a mistrial is declared over the defendant's objection, the defendant cannot be retried unless the mistrial was 'manifestly necessary' ").

{36}     "We review the grant or denial of a motion for mistrial for an abuse of discretion." *State v. Caudillo*, 2003-NMCA-042, ¶ 12, 133 N.M. 468, 64 P.3d 495. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Woodward*, 1995-NMSC-074, ¶ 6, 121 N.M. 1, 908 P.2d

19

231 (internal quotation marks and citation omitted), *abrogated on other grounds as recognized by State v. Montoya*, 2014-NMSC-032, 333 P.3d 935.

{37} In *State v. Salazar*, this Court explained that the illness of a juror may be considered manifest necessity for the declaration of a mistrial. 1997-NMCA-088, ¶ 6, 124 N.M. 23, 946 P.2d 227. In analyzing the propriety of the district court's decision to declare a mistrial we consider the extent to which the district court gave appropriate consideration to potential alternatives to doing so. *State v. Messier*, 1984-NMCA-085, ¶ 14, 101 N.M. 582, 686 P.2d 272. In particular, we have held that "[w]here a reasonable continuance may resolve the problem, it should be undertaken in lieu of granting a mistrial." *Id.* ¶ 14. We have also acknowledged that manifest necessity for a mistrial may arise from "circumstances where a judge, juror or witness has become ill or unavailable." *Id.* ¶ 12.

{38} In this case, the need for a mistrial arose as a result of an injury to a juror. That juror sent a message to the district court on the morning of what would have been the jury's second day of deliberation, informing the court that she had broken her arm, rendering her unavailable that day. The district court went on the record to inform the parties of the situation to seek their input. All agreed that a continuance was preferable to a mistrial; however, the court cautioned that if the injured juror was to be "out of pocket for a series of days," then a mistrial would become necessary. The

following day, the court informed the parties that the injured juror was still unavailable and that she had an appointment with a doctor for the following day. It appeared that the juror would be unavailable for an extended period, and the court proposed to declare a mistrial. Defense counsel suggested the possibility of proceeding with an eleven-person jury, but when the district court pointed out that all parties would need to stipulate to that course of action, counsel informed the court that Defendant—who was in the courtroom—did not agree to that stipulation. Ultimately, the district court declared a mistrial.

{39} Based on the record before us, we conclude that the district court in this case properly considered options short of declaring a mistrial and "reasonably delayed its ruling until other reasonable alternatives had been considered and eliminated." *State v. Gutierrez*, 2012-NMCA-013, ¶ 23, 269 P.3d 905, *rev'd on other grounds*, 2014-NMSC-031, 333 P.3d 247. Absent Defendant's consent, there was no way to proceed without the injured juror. Since it was not possible to proceed and, more generally, because the prolonged unavailability of a juror results in the necessity for a mistrial, we conclude that the district court did not err in finding manifest necessity in this case, thus, Defendant's retrial did not violate the prohibition against double jeopardy. *See Salazar*, 1997-NMCA-088, ¶ 23,

{40}     To the extent that Defendant argues that the district court could have avoided finding manifest necessity to declare a mistrial if it had designated alternate jurors prior to trial that would have been able to replace the injured juror in deliberations, we disagree. Because alternate jurors cannot be substituted once the case has been submitted to a jury, the lack of alternate jurors is not determinative in this case since deliberations were underway prior to the juror's injury. *See* Rule 5-605(B) NMRA ("Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties."); *State v. Sanchez*, 2000-NMSC-021, ¶ 23, 129 N.M. 284, 6 P.3d 486 (holding that the substitution of an alternate juror for an unavailable or disqualified juror after submission of the case to the jury, is error creating a presumption of prejudice).

**D.     Defendant's Motion For Mistrial**

{41}     In addition to trafficking and possession of paraphernalia, Defendant was initially charged with abandonment or abuse of a child. The district court entered a directed verdict on the child abuse charge prior to the declaration of a mistrial at Defendant's first trial and was not at issue when Defendant was retried. Prior to voire dire at the retrial; however, the district court told the potential jurors that Defendant was charged with trafficking, abandonment of a child, and possession of

22

paraphernalia. A bench conference ensued at which Defendant objected to the reference to abandonment of a child and requested a mistrial. Defendant's request was denied, and the jury was instructed that the district court had made a mistake and that the only charges against the Defendant were for trafficking and possession.

{42} Defendant argues that the district court's failure to grant a mistrial after referencing the dismissed charge is reversible error. As previously stated, the denial of a motion for mistrial is reviewed for abuse of discretion. *Caudillo*, 2003-NMCA-042, ¶ 12. Thus, the district court's ruling is to be affirmed unless it was "clearly against the logic and effect of the facts and circumstances of the case." *Woodward*, 1995-NMSC-074, ¶ 6 (internal quotation marks and citation omitted). New Mexico courts have recognized that the grant of a mistrial is an extreme remedy, *State v. Allison*, 2000-NMSC-027, ¶ 23, 129 N.M. 566, 11 P.3d 141, and "[c]ourts rarely grant a motion for mistrial based on mere equivocal evidence of possible juror bias or prejudice, even with the potential to negatively impact a trial." *State v. Gallegos*, 2009-NMSC-017, ¶ 28, 146 N.M. 88, 206 P.3d 993.

{43} In this case, Defendant asserts that members of the venire panel expressed reluctance during voir dire to serve as jurors in a case involving child abuse. Even assuming that those members of the venire ultimately served as jurors in this case, Defendant was not tried on any charges alleging child abuse. Rather, Defendant

23

asserts that prejudicial error arose from the mere fact that the district court inadvertently referred to a charge of child abandonment before promptly explaining that Defendant faced no such charge. Given these circumstances, it does not appear likely that the district court's promptly remedied misstatement injected any serious risk of "unfair prejudice, confusion of the issues, or misleading the jury," *State v. Baca*, 1976-NMSC-015, ¶ 6, 89 N.M. 204, 549 P.2d 282, since the issue of child abandonment or abuse was never placed before the jury in any way.

{44}     Further, it appears from the record that the district court promptly delivered a curative instruction explaining that Defendant was not charged with child abandonment or abuse. As a general principle, New Mexico courts have long recognized that a prompt admonition to disregard improper material inadvertently placed before the jury "sufficiently cures any prejudicial effect which might otherwise result." *Newman*, 1989-NMCA-086, ¶ 19; *State v. Sanchez*, 1974-NMCA-144, ¶ 13, 87 N.M. 140, 530 P.2d 404 (holding admonition "adequately cured any prejudice which may have resulted"); *see State v. Ferguson*, 1967-NMSC-032, ¶ 8, 77 N.M. 441, 423 P.2d 872 ("[T]he general rule of law and the prevailing rule of law in New Mexico is that, when improper evidence is introduced, objected to and withdrawn from the consideration of a jury with later instruction to disregard such testimony, the

24

withdrawing and admonition cure any prejudicial effect the evidence might have had.").

{45} Defendant suggests that the district court's corrected recitation of the charges against Defendant was insufficient to correct the error since the prosecutor referenced Defendant as "father of the year" in closing arguments, and because some testimony referenced Defendant's child. However, it does not appear that Defendant renewed his motion for a mistrial after the testimony or after the prosecutor's remarks in closing. We conclude that the district court did not err in denying Defendant's motion for a mistrial.

**CONCLUSION**

{46} For the forgoing reasons, we affirm.

{47} **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**

25