The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: **November 21, 2024**

**No. A-1-CA-40885**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.

**MARCO MELO-FERNANDEZ,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lucy Solimon, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Emily Bowen, Assistant Attorney General
Albuquerque, NM

for Appellee

Sitterly Law Firm, LLC
Nick Sitterly
Albuquerque, NM

for Appellant

**OPINION**

**BACA, Judge.**

{1}    Defendant Marco Melo-Fernandez pleaded no contest to a charge of knowingly leaving the scene of an accident where the accident results in great bodily harm or death, contrary to NMSA 1978, Section 66-7-201(C) (1989). The district court sentenced Defendant to a six-year term of imprisonment, pursuant to NMSA 1978, Section 31-18-15(A)(8) (2016)[1] as a "third degree felony resulting in the death of a human being." On appeal, Defendant argues that the district court erred in imposing the six-year basic sentence of imprisonment of Section 31-18-15(A)(8) to his conviction under Section 66-7-201(C), as opposed to the three year basic sentence of imprisonment of Section 31-18-15(A)(11). Concluding that the district court erred by sentencing Defendant, pursuant to Section 31-18-15(A)(8) rather than Section 31-18-15(A)(11), we reverse and remand to the district court for resentencing.

---

[1]We note that Section 31-18-15 was subsequently amended in 2019, 2022, and 2024; however, the relevant language in Subsection (A)(8) stating that the basic sentence of six years imprisonment "for a third degree felony resulting in the death of a human being" remained unchanged. Nevertheless, because "the law, at the time of the commission of the offense, is controlling," *State v. Allen*, 1971-NMSC-026, ¶ 6, 82 N.M. 373, 482 P.2d 237, the 2016 version of Section 31-18-15 was in effect when the accident occurred in 2017, and we therefore refer to Subsections (A)(8), (11), as used in the 2016 version of the statute.

## BACKGROUND

{2}    Defendant was charged by grand jury indictment with one count of homicide by vehicle (reckless driving), contrary to NMSA 1978, Section 66-8-101(A) (2016); and one count of knowingly leaving the scene of an accident where the accident results in great bodily harm or death, contrary to Section 66-7-201(C), following an automobile accident between an Infiniti G37 that Defendant was driving and a GMC Safari minivan, whose driver (Victim) died. Defendant pleaded no contest only to the charge of knowingly leaving the scene of an accident where the accident results in great bodily harm or death in violation of Section 66-7-201(C). In the plea agreement, the parties stipulated to the following facts:

1.    Defendant was the driver of a motor vehicle involved in an accident, which resulted in the death of [Victim];

2.    Defendant knew there was an accident;

3.    Defendant knowingly failed to stop his motor vehicle at the scene of the accident or as close as possible without obstructing traffic more than necessary, or Defendant knowingly failed to immediately return to the scene of the accident;

4.    Defendant knowingly failed to comply with the requirements of [NMSA 1978,] Section 66-7-203 [(1978)] by not giving his name, address, and the registration number of the vehicle he was driving to the person struck or driver or occupant of or any person attending to the vehicle which was collided with and Defendant knowingly failed to render to any person injured in such accident reasonable assistance; and

5.    This happened, in Albuquerque, Bernalillo County, New Mexico on or about May 29, 2017.

{3} Before sentencing, the district court allowed the parties to brief the issue of whether the sentencing provision of Section 31-18-15(A)(8) was applicable to knowingly leaving the scene of an accident in violation of Section 66-7-201(C). At the sentencing hearing, the district court ruled that the six-year term of imprisonment provided for by Section 31-18-15(A)(8) was applicable. Defendant, in the plea agreement, preserved his right to appeal the district court's finding related to Section 31-18-15(A)(8). This appeal follows.

**DISCUSSION**

{4} The issue before us is whether the district court erred in sentencing Defendant to a six-year term of imprisonment "for a third degree felony resulting in the death of a human being," pursuant to Section 31-18-15(A)(8), rather than sentencing Defendant to a three-year term of imprisonment as a third degree felony pursuant to Section 31-18-15(A)(11), based on Defendant's conviction for knowingly leaving the scene of an accident where the accident results in the death of a human being, contrary to Section 66-7-201(C). This is an issue of first impression. The State suggests that because we are reviewing a district court's sentencing decision the applicable standard of review is abuse of discretion. *See State v. Bonilla*, 2000-NMSC-037, ¶ 6, 130 N.M. 1, 15 P.3d 491 ("A [district] court's sentencing is reviewed for abuse of discretion."). Although generally that may be true, because our review of the sentencing decision of the district court involves a question of

3

statutory construction, our review is de novo. *See State v. Juan*, 2010-NMSC-041, ¶¶ 36-37, 148 N.M. 747, 242 P.3d 314.

{5} "The principal command of statutory construction is that the court should determine and effectuate the intent of the [L]egislature using the plain language of the statute as the primary indicator of legislative intent." *Id.* ¶ 37 (internal quotation marks and citation omitted). "[W]here the meaning of the statutory language is plain, and where the words used by the Legislature are free from ambiguity, there is no basis for interpreting the statute." *State v. Shije*, 1998-NMCA-102, ¶ 6, 125 N.M. 581, 964 P.2d 142 (internal quotation marks and citation omitted). "The plain meaning rule requires that statutes be given effect as written without room for construction unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason." *State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830 (internal quotation marks and citation omitted). With this in mind, we begin with a review of Section 31-18-15(A).

{6} Section 31-18-15(A) provides in relevant part:

> A. If a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows:
>
> . . . .
>
> (8) for a third degree felony resulting in the death of a human being, six years imprisonment;

4

. . . .

> (11) for a third degree felony, three years imprisonment."

{7} We next review Section 66-7-201, generally. Section 66-7-201 provides in relevant part that:

> A.  The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible, but shall then immediately return to and in every event shall remain at the scene of the accident until [they] ha[ve] fulfilled the requirements of Section 66-7-203 . . . . Every such stop shall be made without obstructing traffic more than is necessary.
>
> B.  Any person failing to stop or to comply with the requirements of Section 66-7-203 . . . where the accident results in great bodily harm or death is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 . . . .
>
> C.  Any person who knowingly fails to stop or to comply with the requirements of Section 66-7-203 . . . where the accident results in great bodily harm or death is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 . . . .
>
> D.  Any person failing to stop or comply with the requirements of Section 66-7-203 . . . where the accident does not result in great bodily harm or death is guilty of a misdemeanor and shall be sentenced pursuant to the provisions of Subsection A of [NMSA 1978,] Section 31-19-1 [(1984)].

{8} Because Section 66-7-201 mandates compliance with the requirements of Section 66-7-203, we consider, as well, Section 66-7-203. Section 66-7-203 provides:

5

The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give [their] name, address and the registration number of the vehicle [they are] driving and shall upon request exhibit [their] driver's license to the person struck or the driver or occupant of or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

{9}     Here, there is no dispute that knowingly leaving the scene of an accident where the accident results in great bodily harm or death is a third degree felony. *See* § 66-7-201(C). Accordingly, the sole issue before this Court is whether this third degree felony is punishable as a third degree felony that resulted in the death of a human being, pursuant to Section 31-18-15(A)(8). As we explain, under the present circumstances, we answer in the negative and first consider the plain language of the statutes.

{10}     The plain language of the statutes does not establish as a matter of law that a violation of Section 66-7-201(C) satisfies the requirement under Section 31-18-15(A)(8), that the person be convicted of a third degree felony "resulting in the death of a human being." As can be readily discerned from a review of Section 66-7-201, set forth above, the plain language of Section 66-7-201 makes clear that the crime it proscribes is leaving the scene of an accident without complying with the requirements of Section 66-7-203. *See State v. Montelongo Esparza*, 2020-NMCA-

6

050, ¶¶ 12-13, 475 P.3d 815 (stating that the purposes of our hit-and-run statutes, including Section 66-7-201, are "to prohibit drivers from evading criminal or civil liability, to ensure people receive necessary aid or medical attention, and to deter drivers from thwarting or impeding investigations and avoiding liability for the harm they cause by failing to stop or failing to comply with Section 66-7-203." (internal quotation marks and citation omitted)); *see also State v. Melendrez*, 2014-NMCA-062, ¶ 11, 326 P.3d 1126 (distinguishing "reckless driving that results in significant bodily harm or . . . death . . . to another," from Section 66-7-201(C), which "addresses the harm caused by drivers who knowingly leave the scene of an accident *involving* great bodily harm or death and fail to fulfill the duty to render aid and provide pertinent identification information." (emphasis added)). Because the act proscribed by Section 66-7-201(C) is leaving the scene of an accident without complying with the requirements of Section 66-7-203, unlike other driving crimes, "[u]nder Section 66-7-201(C), the driver's culpability for the accident is not relevant." *Melendez*, 2014-NMCA-062, ¶ 11. Thus, we conclude that the plain language of Section 66-7-201(C) is designed to encourage individuals involved in motor vehicle accidents where the accident results in great bodily harm or death to remain at the scene of the accident until they have complied with the requirements of Section 66-7-203, not to punish the evil resulting from great bodily harm or death.

{11}     This conclusion does not foreclose the applicability of Section 31-18-15(A)(8), because the Legislature has tied whether the accident results in great bodily harm or death to the applicable term of imprisonment for the crime of leaving the scene of an accident without complying with the requirements of Section 66-7-203. *See Montelongo Esparza*, 2020-NMCA-050, ¶ 8 ("Depending on whether the accident resulted in 'great bodily harm or death' . . . the driver may be found guilty of a misdemeanor, a fourth degree felony, or a third degree felony." (quoting § 66-7-201(B)-(D)). Pursuant to Section 66-7-201(C), the provision at issue in the present case, the applicable term of imprisonment is increased to a third degree felony if (1) the relevant *accident* resulted in great bodily harm or death; *and* (2) the driver of a vehicle involved in an accident "*knowingly* fail[ed] to stop or to comply with the requirements of Section 66-7-203." (Emphasis added.) In this way, great bodily harm or death is relevant to the punishment scheme and to the degree of felony. But the plain language of Section 66-7-201(C) does not answer the question before us: Does the third degree felony set forth in Section 66-7-201(C) result in the death of a human being such that the six-year basic term of imprisonment applies?

{12}     To answer that question, we next consider what our courts have decided when confronted with issues substantially similar or analogous to the issue we address in this case. We look to other cases where we held that a felony resulted in the death of a human being as required by Section 31-18-15(A)(8).

{13} In *Shije*, the defendant pleaded guilty to, inter alia, conspiracy to commit first degree murder. 1998-NMCA-102, ¶¶ 1, 3. In that case, we rejected the defendant's argument that because a conspiracy to commit murder necessarily happens before the murder, conspiracy could not "result" in a death as required by Section 31-18-15(A). *Shije*, 1998-NMCA-102, ¶¶ 5, 7. In so doing, we recognized that (1) there is no requirement that the death occur in the commission of the crime; and (2) the crime need not physically cause the death. *Id.* ¶ 6. We held that Section 31-18-15(A) "require[d] only" that the crime "result in the death of a human being." *Shije*, 1998-NMCA-102, ¶ 6. We further noted that because "the [d]efendant and his co[]conspirators agreed to kill and then proceeded to kill . . . [t]he conspiracy set in motion the events which led to the killing." *Id.* ¶ 7. Therefore, we concluded that the "conspiracy resulted in the death of a human being." *Id.*

{14} Subsequently, in *State v. Guerro*, 1999-NMCA-026, ¶ 1, 126 N.M. 699, 974 P.2d 669, the defendant entered an *Alford* plea[2] to five counts of homicide by vehicle. There, we rejected the defendant's argument that because homicide by vehicle was not statutorily identified as a felony "resulting in the death of a human being," *see* § 31-18-15(A)(8), it was not subject to an increased sentence pursuant to Section 31-18-15(A)(8), and we reiterated that the increased sentence pursuant to

---

[2]*See North Carolina v. Alford*, 400 U.S. 25 (1970).

9

Section 31-18-15(A) applies to "any crimes that result in people's deaths." *Guerro*, 1999-NMCA-026, ¶¶ 10-11.

{15}    Finally, in *State v. Franco* the defendant was convicted for shooting and killing the victim during a drug transaction. 2016-NMCA-074, ¶ 2, 387 P.3d 279. The defendant argued that a conviction resulting from the shooting and an increased basic sentence that was based on the same shooting violated double jeopardy protections. *Id.* ¶ 17. This Court rejected that argument because Section 31-18-15(A) is not an additional punishment, but instead the basic sentence for a crime resulting in the death of a human being. *See Franco*, 2016-NMCA-074, ¶¶ 18, 32. We explained that "[d]eath is a recognized basis for prosecution" under the controlling criminal statute and "[a] death occurred as a result of [the d]efendant's actions that fit the crime's definition." *Id.* ¶ 32. In turn, Section 31-18-15(A) "fits the crime committed for sentencing purposes because the crime resulted 'in the death of a human being.'" *Franco*, 2016-NMCA-074, ¶ 32. (quoting § 31-18-15(A)(4)). Double jeopardy posed no bar because "[t]he end result is one crime, punished one time." *Id.*

{16}    In each of these cases, the crime proscribed by statute and for which the defendant pleaded or was convicted set in motion events, which resulted in the death of a human being. This holds true regardless of whether the death occurred in the commission of the crime, or whether the crime physically caused the death.

10

Accordingly, we comprehend that, under any interpretation of the phrase "felony resulting in the death of a human being," *see* § 31-18-15(A)(8), it at least requires that the death occur as a consequence of the crime the defendant committed in the particular case. *See Shije*, 1998-NMCA-102, ¶ 7 ("It cannot seriously be denied that *this* conspiracy resulted in the death of a human being." (emphasis added)).

{17}     In determining the appropriate application of Section 31-18-15(A) to Section 66-7-201(C), we consider as well what other states have done in similar or analogous circumstances. We first consider a case from Alabama—*Lamar v. State*, 803 So. 2d 576 (Ala. Crim. App. 2001).

{18}     In *Lamar*, the defendant was involved in a multiple motor vehicle accident which resulted in injury to others. *Id.* at 577. The defendant subsequently pleaded guilty to leaving the scene of an accident resulting in injury pursuant to Alabama Code Section 32-10-1(a) (1943). *See Lamar*, 803 So. 2d at 577. As a result, the defendant was sentenced, in part, to pay restitution to the victims under a restitution code provision that required compensation for loss that resulted from "criminal activity or conduct," which a different statute defined as conduct that the defendant had admitted, or for which the defendant had been convicted. *Id.* at 576-77 (emphasis omitted). The defendant appealed the restitution order claiming that the "court improperly ordered him to pay restitution because . . . the injuries the victims sustained were not proximately caused by his leaving the scene." *Id.* at 577 (internal

11

quotation marks omitted). Like Defendant in the case before us, the defendant in *Lamar* specifically argued that he should not be ordered to pay restitution because the victim's injuries, sustained during the accident, "occurred prior to his leaving the scene of the accident." *See id.*

{19} Following review of Alabama Code Sections 32-10-1(a) and 32-10-2 (1943), which are similar to Sections 66-7-201(A) and 66-7-203, respectively, the *Lamar* Court determined that because restitution was required to be tied to the crime to which the defendant pleaded guilty and that the crime of leaving the scene did not cause the injuries, the plea did not "authorize" a sentence to pay restitution. *Lamar*, 803 So. 2d at 578. The court observed that, through his guilty plea, the defendant admitted, somewhat similar to Defendant in this case, that: (1) the defendant had been involved in an accident where physical injury occurred; (2) the defendant failed to immediately stop and remain at the scene; (3) the defendant failed to provide his name, address, and registration number to the other drivers; and (4) the defendant failed to offer reasonable assistance to those injured at the scene of the accident. *Id.* These admissions were significant because under Alabama law "before there can be any recovery [of restitution], the criminal activity must be the proximate cause of the pecuniary loss, damage, or injury." *Id.* at 577. Significantly, the *Lamar* Court further determined that "[t]he crime of 'leaving the scene' does not require that the defendant *cause* the accident; it requires only that he be *involved* in the accident,"

12

and that the defendant never admitted causing the accident resulting in the victims' injuries. *Id.* at 578. Alternatively, the *Lamar* Court also considered whether the defendant admitted any facts that would support restitution for "other criminal conduct." *Id.* Thus, because the defendant "never admitted any conduct that could be said to be the proximate cause of [the victims'] injuries," the Court of Criminal Appeals of Alabama held that the "trial court had no statutory authorization to order [the defendant] to pay restitution to [the victims] for the injuries they sustained during the accident." *Id.* at 579. With both determinations, key to the *Lamar* Court was that neither the crime itself nor the defendant's admissions demonstrated that the defendant caused the injuries.

{20}     We next consider a case from Florida. In *Rodriguez v. State*, the defendant appealed "the sentence imposed, pursuant to his plea agreement, for leaving the scene of an accident resulting in the death of a person." 684 So. 2d 864, 865 (Fla. Dist. Ct. App. 1996). There, the court held that the "trial court erred in scoring points for the death of the victim." *Id.* In reaching this holding, the court relied on *Geary v. State*, 675 So. 2d 625, 626 (Fla. Dist. Ct. App. 1996), which the *Rodriguez* court interpreted as holding that in determining a sentence for a defendant convicted of leaving the scene of an accident, "it was error" to consider a "death *where there was no evidence that the victims'*[] *death was caused by or was a direct result of the*

*defendant's leaving the scene of the accident.*" *Rodriguez*, 684 So. 2d at 865 (emphasis added).

{21} In light of the foregoing, we turn to and consider the State's argument. The State argues that "there are instances in which a driver's act of leaving the scene of an accident without calling for emergency aid could cause a person who sustained otherwise non-lethal injuries to die solely due to the absence of medical assistance." The State appears to submit that under this set of facts the proscribed act of knowingly leaving the scene of an accident could itself result in death. As we have explained, however, it is the circumstances of the commission of the crime at issue that controls. *See Shije*, 1998-NMCA-102, ¶ 7. Because here there is no evidence that Defendant, by failing to call for emergency aid, caused a victim who sustained otherwise nonlethal injuries to die solely due to the absence of medical assistance, we decline to decide whether in such an instance knowingly leaving the scene of an accident would result in the death of a human being as required by Section 31-18-15(A)(8). *See State v. Lassiter*, 2016-NMCA-078, ¶ 15, 382 P.3d 918 (expressing that "appellate courts do not give advisory opinions on purely hypothetical issues"). We make clear, however, that this opinion should not be construed as foreclosing the State's rendering aid theory. Instead our holding today is expressly limited to the facts of the case before us.

**{22}** In light of the facts that (1) Defendant pleaded no contest *only* to knowingly leaving the scene of an accident that resulted in the death of a human being, thereby failing to comply with the requirements of Section 66-7-203; (2) Defendant never pleaded guilty to any conduct that caused the death of the Victim;[3] and (3) the purpose of the crime of leaving the scene of an accident is "to prohibit drivers from evading criminal or civil liability, to ensure people receive necessary aid or medical attention, and to deter drivers from thwarting or impeding investigations and avoiding liability for the harm they cause by failing to stop or failing to comply with Section 66-7-203," *Montelongo Esparza*, 2020-NMCA-050, ¶ 13 (internal quotation marks and citation omitted), we hold that Defendant's plea to third degree leaving the scene of an accident did not admit to conduct that "result[ed] in the death of a human being" as contemplated by Section 31-18-15(A)(8). Therefore, we conclude

---

[3]As to this point, we note that while Defendant pleaded *no contest* to the charge of knowingly leaving the scene of the accident thereby not contesting that the State could prove that charge, he thereby explicitly did not admit that he was guilty of or that he committed that crime. *See Kipnis v. Jusbasche*, 2017-NMSC-006, ¶ 15, 388 P.3d 654 (explaining that "[i]n New Mexico, a [no contest] plea has the same effect as a guilty plea for the purpose of entering a judgment and sentence in the case in which the plea is entered, but unlike a guilty plea *it is not an express or implied admission of factual guilt*" (emphasis added)). We note as well that, although not expressly stated in either the plea agreement, the amended judgment and partially suspended sentence, or any other pleading contained in the record, the more serious charge of vehicular homicide as charged in Count 1 of the "Grand Jury Indictment" appears to have been dismissed or abandoned by the State.

15

that the district court erred by sentencing Defendant pursuant to Section 31-18-15(A)(8).

**CONCLUSION**

{23}     We reverse and remand to the district court with instructions to sentence Defendant pursuant to Section 31-18-15(A)(11).

{24}     **IT IS SO ORDERED.**


_____
                                        **GERALD E. BACA, Judge**


**WE CONCUR:**


_____
**KRISTINA BOGARDUS, Judge**


_____
**KATHERINE A. WRAY, Judge**

16